**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, *et al.*,<br><br>                              *Plaintiffs*,<br><br>        v.<br><br>CVS HEALTH CORPORATION, *et al.,*<br><br>                              *Defendants*. | Civil Action<br>No. 1:20-cv-00236 |

**PLAINTIFFS BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.
AND HEALTH OPTIONS, INC.'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS IN FAVOR OF ARBITRATION**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.   CVS HAS WAIVED ANY RIGHT TO ARBITRATE FLORIDA BLUE'S CLAIMS. ......... 6

   A. THE FLORIDA ARBITRATION CODE, NOT THE FEDERAL ARBITRATION
      ACT, APPLIES............................................................................................................ 6

   B. UNDER FLORIDA LAW, CVS HAS WAIVED ANY RIGHT TO ARBITRATE....... 9

   C. ALTHOUGH FEDERAL LAW DOES NOT APPLY, CVS HAS ALSO WAIVED ITS
      RIGHT TO ARBITRATE UNDER FEDERAL LAW.................................................. 14

II.  AT MOST, ONLY TRANSACTIONS THAT OCCURRED DURING THE AGREEMENT
    ARE ARBITRABLE. ..................................................................................................... 18

CONCLUSION..................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Addison v. Carballosa*,
    48 So. 3d 951 (Fla. 3d DCA 2010) ...................................................................... 10

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ............................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................................... 8

*Bared & Co. v. Specialty Maint. & Const., Inc.*,
    610 So. 2d 1 (Fla. 2d DCA 1992) ....................................................................... 12

*Breckenridge v. Farber*,
    640 So. 2d 208 (Fla. 4th DCA 1994) ............................................................. 10, 12

*Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Grp., LLC*,
    124 So. 3d 968 (Fla. 3d DCA 2013) ............................................................... 18, 19

*Combined Energies v. CCI, Inc.*,
    484 F. Supp. 2d 186 (D. Me. 2007) ................................................................. 19, 20

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ............................................................................................. 13

*Dewees v. Johnson*,
    329 So. 3d 765 (Fla. 4th DCA 2021) ................................................................... 19

*Dialysis Access Center, LLC v. RMS Lifeline, Inc.*,
    932 F.3d 1 (1st Cir. 2019) ..................................................................................... 7

*Est. of Williams ex rel. Williams v. Manor Care of Dunedin, Inc.*,
    923 So. 2d 615 (Fla. 2d DCA 2006) ..................................................................... 10

*Estate of Orlanis ex rel. Marks v. Oakwood Terrace Skilled Nursing & Rehab. Ctr.*,
    971 So. 2d 811 (Fla. 3d DCA 2007) ..................................................................... 12

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................. 13

*Foulger-Pratt Residential Contracting, LLC v. Madrigal Condos., LLC*,
    779 F. Supp. 2d 100 (D.D.C. 2011) ................................................................... 7, 8

*FPE Foundation v. Cohen*,
    801 F.3d 25 (1st Cir. 2015) ................................................................................. 20

*Garg v. VHS Acquisition Subsidiary No. 7*,
    No. 4:20-CV-40060-TSH, 2021 WL 1220887 (D. Mass. Mar. 31, 2021) ............. 17

*Green Tree Servicing, LLC v. McLeod,*
    15 So. 3d 682 (Fla. 2d DCA 2009) ...................................................... 12

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
    552 U.S. 576 (2008) ........................................................................... 6

*Hansen v. Dean Witter Reynolds, Inc.,*
    408 So. 2d 658 (Fla. 3d DCA 1981) ................................................... 12

*Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle Homeowners Ass'n, Inc.,*
    102 So. 3d 722 (Fla. 4th DCA 2012) .................................................. 12

*In re Citigroup, Inc.,*
    376 F.3d 23 (1st Cir. 2004) ............................................................... 16

*In re Tyco Int'l, Ltd.,*
    No. 02-1335-B, 2003 WL 23112341 (D.N.H. Dec. 29, 2003) ............... 21

*Inverrary Gardens Condo. I Ass'n, Inc. v. Spender,*
    939 So. 2d 1159 (Fla. 4th DCA 2006) ................................................ 10

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark,*
    137 S. Ct. 1421 (2017) ......................................................................... 8

*Klay v. All Defendants,*
    389 F.3d 1191 (11th Cir. 2004) ......................................................... 19

*Leal v. Sinclair Broad. Grp., Inc.,*
    No. A-16-CV-679-LY, 2017 WL 1458810 (W.D. Tex. Apr. 25, 2017) ...... 14

*Madorskaya v. Frontline Asset Strategies, LLC,*
    No. 19-CV-895-PKC-RER, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021) ....... 14

*Marine Env't Partners, Inc. v. Johnson,*
    863 So. 2d 423 (Fla. 4th DCA 2003) ............................................ 10, 11

*Marthame Sanders & Co. v. 400 W. Madison Corp.,*
    401 So. 2d 1145 (Fla. 4th DCA 1981) ................................................ 10

*Mastrobuono v. Shearson Lehman Hutton,*
    514 U.S. 52 (1995) ............................................................................. 13

*Mora v. Abraham Chevrolet-Tampa, Inc.,*
    913 So. 2d 32 (Fla. 2d DCA 2005) .................................................... 10

*Narragansett Elec. Co. v. Constellation Energy Commodities Grp., Inc.,*
    563 F. Supp. 2d 325 (D.R.I. 2008) .................................................... 21

*Oliveira v. New Prime, Inc.,*
    424 F. Supp. 3d 206 (D. Mass. 2019) .................................................. 9

*Olson Elec. Co. v. Winter Park Redevelopment Agency*,
　　987 So. 2d 178 (Fla. 5th DCA 2008) ................................................. 12

*Ortiz-Espinosa v. BBVA Secs. of Puerto Rico, Inc.*,
　　852 F.3d 36 (1st Cir. 2017) ........................................................... 6

*O'Flarity v. Trend Star Dev., Inc.*,
　　689 So. 2d 1297 (Fla. 4th DCA 1997) ............................................... 12

*O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.*,
　　944 So. 2d 181 (Fla. 2006) ........................................................... 10

*Powertel, Inc. v. Bexley*,
　　743 So. 2d 570 (Fla. 1st DCA 1999) ................................................. 8

*Raymond James Financial Servs., Inc. v. Saldukas*,
　　896 So. 2d 707 (Fla. 2005) ........................................................... 9

*Rintin Corp., S.A. v. Domar, Ltd.*,
　　476 F.3d 1254 (11th Cir. 2007) .................................................... 7, 8

*Roe v. Amica Mut. Ins. Co.*,
　　533 So. 2d 279 (Fla. 1988) ........................................................... 9

*Salary Continuation Corp. v. Brown & Brown of Detroit, Inc.*,
　　No. 6:11-CV-1698-ORL-36GJK, 2012 WL 12904726 (M.D. Fla. July 25, 2012) ............... 14

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*,
　　748 F.3d 708 (6th Cir. 2014) ......................................................... 7

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*,
　　540 F. Supp. 3d 182 (D.R.I. 2021) .................................................. 17

*Sitarik v. JFK Med. Ctr. Ltd. Partnerships*,
　　11 So. 3d 973 (Fla. 4th DCA 2009) .................................................. 11

*Smith v. Allstate Power Vac, Inc.*,
　　482 F. Supp. 3d 40 (E.D.N.Y. 2020) .................................................. 9

*Snelling & Snelling, Inc. v. Reynolds*,
　　140 F. Supp. 2d 1314 (M.D. Fla. 2001) ........................................... 10, 16

*Solo v. United Parcel Serv. Co.*,
　　947 F.3d 968 (6th Cir. 2020) .............................................. 11, 14, 15, 16

*Steiner v. Horizon Moving Sys., Inc.*,
　　No. EDCV 08-682-VAP, 2008 WL 4822774 (C.D. Cal. Oct. 30, 2008) ...................... 16

*Travel Express Investments, Inc. v. Hemani*,
　　No. 6:08-cv-01699-ORL-35DAB, 2009 WL 10670424 (M.D. Fla. May 12, 2009) ............... 9

*Vega v. Cont. Cleaning Maint.,*
    No. 03 C 9130, 2006 WL 1554383 (N.D. Ill. June 1, 2006) ................................................ 18

*Versaille Sur La Mer Condo. Assoc., Inc. v. Lexington Ins. Co.,*
    No. 18-cv-1125-ORL-37TBS, 2018 WL 3827154 (M.D. Fla. July 24, 2018) ...................... 12

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989) ...................................................................................... 6, 8, 13

*Waithaka v. Amazon.com, Inc.,*
    966 F.3d 10 (1st Cir. 2020) ......................................................................................... 8

*Williams v. Cigna Financial Advisors, Inc.,*
    56 F.3d 656 (5th Cir. 1995) ...................................................................................... 11

## Statutes

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................................... *passim*

Florida Arbitration Code, Fla. Stat. § 682.01 *et seq*. (2000) (amended 2013). ................... *passim*

## INTRODUCTION

*Nearly two years ago*, Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc. (together, "Florida Blue"), joined with multiple other Blue Cross and Blue Shield health insurers to file suit against CVS Health Corporation and CVS Pharmacy, Inc. ("CVS") to recover for CVS's massive drug overcharges. Now, CVS for the first time tries to compel Florida Blue to arbitrate its claims under an agreement signed in 2001 and terminated in 2011 (the "Terminated Agreement"). The Court should reject CVS's long-delayed attempt to dismiss Florida Blue's claims in favor of arbitration, which is without merit for multiple independent reasons.

*First*, CVS has waived any right to attempt to enforce the Terminated Agreement's arbitration clause concerning the claims in this litigation. Florida Blue and the other original plaintiffs filed their lawsuit in May 2020. CVS claims it was unaware of the Terminated Agreement until first reviewing it in December 2021. But this makes no sense. CVS was a party to the contract, and—as one of the largest and most sophisticated corporations in the world, represented by capable and experienced counsel, and a participant in litigation similar to this case for years—is charged with knowledge of the contract's terms under blackletter law. In any event, Florida Blue produced the Terminated Agreement in discovery in *October 2020.*

Despite this, for some untold strategic reason, CVS waited until now to attempt to enforce the clearly stale arbitration provision. But in the nearly two years since Plaintiffs filed suit, CVS has actively participated in litigation before this Court: CVS moved to dismiss Florida Blue's claims; after CVS's motion to dismiss was denied, CVS filed its answer; CVS served and answered extensive written discovery requests; CVS has produced thousands of documents; and the parties have conducted multiple written and telephonic discussions concerning discovery, with document and data production efforts ongoing. Under Florida arbitration law—which the parties expressly selected, *see* Terminated Agreement § 16.1, but which CVS's motion fails even to mention—basic

participation in litigation, such as answering a complaint and propounding discovery, leads to a waiver of arbitration rights. But even if the Federal Arbitration Act ("FAA") applied, as CVS wrongly claims, CVS's nearly two-year engagement in motions practice, filing an answer, and participation in discovery is a clear waiver of any conceivable arbitration right under the FAA as well. And when CVS's conduct is coupled with the significant prejudice Florida Blue will face if CVS is allowed to divert the case into arbitration now, the conclusion that CVS has waived arbitration is clear-cut. Florida Blue has invested significant time and resources litigating in the District of Rhode Island (in front of the Court, who has presided for years over the similar *Sheet Metal Workers* case and thus has extensive familiarity with the factual and legal issues in dispute). Florida Blue has responded to CVS's motion to dismiss, participated in multiple hearings before the Court, engaged Rhode Island counsel, served and responded to extensive Federal Rules discovery, and pursued the factual and legal development of its claims (and responses to CVS's defenses) informed by the forum in which Florida Blue brought them. Florida Blue thus would be substantially and unfairly prejudiced if, nearly two years in, it was forced to switch course and start over through an arbitration governed by an entirely different set of laws and procedures.

***Second***, even if the Court does not find that CVS has waived its purported arbitration right, the Court should not dismiss any of Florida Blue's post-August 2011 claims because nearly all of Florida Blue's claims concern conduct and overcharges occurring after the effective period of the Terminated Agreement. The contract at issue was terminated in August 2011—more than a decade ago. But Florida Blue's claims in this litigation concern the Health Savings Pass program, which existed until February 2016, and its successor program, the VPSC program, to which CVS transferred HSP members in 2016 and which continues to this day. Thus, the great majority of this case concerns conduct and overcharges ***after the Terminated Agreement ended.*** Even if the Court

were to ignore CVS's clear waiver of its supposed arbitration rights under applicable law, at most the Court would be dismissing claims that predate the contract's 2011 termination. This further underscores why the dismissal in favor of arbitration that CVS seeks is entirely unreasonable.

For these reasons, as more fully explained below, the Court should deny CVS's motion to dismiss.

## BACKGROUND

This lawsuit is about CVS's knowing reporting of inflated usual and customary prices on prescription drugs, which resulted in substantial overcharges to Plaintiffs, who are 13 different Blue Cross and Blue Shield entities or groups of entities. CVS's motion concerns only one of those sets of entities, Florida Blue.

CVS and Florida Blue contracted directly regarding prescription drug pricing in an agreement effective November 27, 2000 (the "Terminated Agreement"). *See* ECF No. 57-2 (Ex. 1)[1]. Florida Blue terminated this Agreement effective August 31, 2011. Mot. 2-3.[2] One aspect of CVS's alleged misconduct at issue in this lawsuit, among others, is CVS's Health Savings Pass program, which began in November 2008 and continued until February 2016. The Agreement therefore overlapped solely with the earliest relevant period in this case, from November 2008 through August 31, 2011.

The Agreement contains an arbitration provision. Although CVS quotes a portion of the arbitration provision, CVS omitted critical text, included in bold underline text below, that CVS

---

[1] Any references beginning "Ex." refer to the exhibits appended to the Declaration of Grant A. Geyerman in Support of Defendants' Motion to Dismiss and Memorandum of Law in Support, dated Feb. 14, 2022 (ECF No. 58-2).  To the extent any such exhibits were redacted or sealed, reference is made to the unredacted or unsealed version.

[2] Any citations to "Mot." or "Motion" refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc.'s Claims in Favor of Arbitration (ECF No. 57-1).

knew from a pre-motion exchange of letters with Florida Blue was a key aspect of this dispute, *see* ECF No. 58-6 (Ex. 4), and that provided that the agreement is governed by the Florida Arbitration Code, *not* by the Federal Arbitration Act:

> 16.1. Both parties agree to meet and confer in good faith to resolve ***any controversy or claim arising out of or relating to this Agreement or the breach thereof***; provided, however, that the foregoing shall in no way be construed in a manner that would modify or limit the rights and obligations of the parties under Section VIII above with respect to the termination of this Agreement. Unless otherwise prohibited by law, ***any such controversy or claim which cannot be so resolved shall be submitted to binding arbitration.*** . . . The arbitration shall be held in the State of Florida at a location to be designated by the party not making the initial demand for arbitration. . . . <u>**Except as otherwise provided in this Agreement, arbitration shall be governed by the provisions of the Florida Arbitration Code.**</u>

ECF 57-2 (Ex. 1), § 16.1 (bold-italics added by CVS on page 3 of Motion; bold-underline added here by Florida Blue).

CVS asserts that it was unaware of its own Agreement when Florida Blue, and five other sets of Blue Cross Blue Shield plans, first initiated this litigation on May 27, 2020. CVS moved to dismiss that complaint on July 31, 2020, without moving to compel arbitration or raising any issues related to arbitration. *See* ECF No. 26. The Court denied CVS's motion to dismiss Florida Blue's complaint on July 6, 2021. *See* ECF No. 46. On August 4, 2021, CVS filed its answer to Florida Blue's complaint. *See* ECF No. 50.

Starting while CVS's motion to dismiss was still pending, the parties conducted extensive document discovery. On September 2, 2020, CVS responded to interrogatory requests and requests for the production of documents served by all of the then-existing Plaintiffs, including Florida Blue. On September 25, 2020, CVS served interrogatory requests and requests for the production of documents on Florida Blue specifically, to which Florida Blue responded on October 16, 2020. On November 30, 2021, CVS also provided notice to Florida Blue that CVS was issuing a

subpoena to a non-party. The parties have since been engaged in extensive document discovery, with both CVS and Florida Blue producing thousands of documents.

As part of that document discovery, on October 16, 2020, Florida Blue produced the Terminated Agreement at BCBS-FL-000001—the very first document in Florida Blue's document production. Document production and written discovery continues to this day.

According to CVS, CVS did not identify this agreement until December 9, 2021, approximately 14 months after it was produced. Mot. 4. CVS then waited more than one month, until January 18, 2022, to send a letter asserting its alleged rights to arbitrate Florida Blue's claims and demanding a response within an arbitrary 10 days. *See* ECF No. 57-3 (Ex. 3). Florida Blue responded by letter six days later on January 24, 2022. *See* ECF No. 58-6 (Ex. 4). That letter expressly stated, among other things, as follows: "The contract's arbitration clause states that it is governed by the Florida Arbitration Code. Terminated Agreement § 16.1. And Florida's arbitration law is clear that even basic participation in litigation, such as answering a complaint and propounding discovery, leads to a waiver of arbitration rights." *Id.* at 2 (citing cases). CVS did not respond to Florida Blue's letter through further meet-and-confer communications. CVS then waited 20 more days, until February 14, 2022, to file its motion. CVS's motion does not mention the Florida Arbitration Code, nor does it cite any Florida cases addressing waiver under that applicable law.[3]

---

[3] CVS's tactical decision to avoid addressing Florida Blue's argument from its January 24, 2022 meet-and-confer letter—the key issue that Florida's Arbitration Code governs—suggests that CVS intends to address that critical issue, for the first time, in a reply brief. Florida Blue notes here that it objects to CVS's doing so and reserves the right either to move to strike, and/or seek leave to file a sur-reply to address, arguments CVS knows to be at issue but has nonetheless opportunistically decided to reserve for its reply.

## ARGUMENT

I.  **CVS Has Waived Any Right To Arbitrate Florida Blue's Claims.**

CVS's motion goes on at length about when the Federal Arbitration Act applies and under what conditions courts have found that parties have waived arbitration rights under the FAA, but that discussion is entirely irrelevant. Here, the parties expressly chose for the Florida Arbitration Code—not the FAA—to govern the Agreement. When state arbitration law applies to an arbitration provision, courts apply state law regarding waiver of those arbitration rights. Under Florida law, a defendant's active participation in litigation—such as CVS's answering the complaint and participating in discovery—waives any right to arbitrate. Moreover, even under inapplicable decisions addressing waiver of FAA arbitration rights, CVS's full participation in this litigation for nearly two years waived any right to arbitrate CVS may have once had.

A.  **The Florida Arbitration Code, Not The Federal Arbitration Act, Applies.**

The parties expressly chose for the Florida Arbitration Code, not the FAA, to govern arbitration, and the Court should apply this agreement according to the Terminated Agreement's express terms. The Supreme Court has made clear that parties to a contract can choose to be bound by state laws of arbitration instead of the Federal Arbitration Act. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 470 (1989) ("We hold that application of the California statute is not pre-empted by the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq*., in a case where the parties have agreed that their arbitration agreement will be governed by the law of California."); *cf. Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 591 (2008) (noting that parties can agree to adopt state law for review of arbitration awards). Accordingly, the First Circuit and numerous federal courts have similarly recognized that parties may agree, through express contractual language, to displace the FAA in favor of state arbitration law. *See Ortiz-Espinosa v. BBVA Secs. of Puerto Rico, Inc.*, 852 F.3d 36, 42 (1st Cir. 2017) (holding that the FAA

"may be displaced by state law" if the parties agree); *see, e.g.*, *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA,* 748 F.3d 708, 716 (6th Cir. 2014) (holding FAA displaced where contract stated "arbitration shall be 'subject to the laws of the State of Michigan'"); *Rintin Corp., S.A. v. Domar, Ltd.*, 476 F.3d 1254, 1258 (11th Cir. 2007) (applying the Florida International Arbitration Act instead of the FAA); *Foulger-Pratt Residential Contracting, LLC v. Madrigal Condos., LLC*, 779 F. Supp. 2d 100, 110 (D.D.C. 2011) (applying the District of Columbia Revised Uniform Arbitration Act instead of the FAA).

CVS and Florida Blue included precisely the kind of language necessary to displace the FAA in favor of state arbitration law. The Terminated Agreement states: "Except as otherwise provided in this Agreement, arbitration shall be governed by the provisions of the Florida Arbitration Code." ECF No. 57-2 (Ex. 1), § 16.1. This language is far more specific than a generic choice of law provision often held insufficient to find that the parties agreed to displace the FAA in favor of state law. *Cf. Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 8 (1st Cir. 2019) (holding that a contract's Puerto Rico choice of law provision did not, without more, reflect agreement to use Puerto Rico's Arbitration Act). Indeed, this language could hardly be clearer: CVS agreed that "arbitration shall be governed by the Florida Arbitration Code," which thereby displaces the FAA.

The District of Columbia district court's discussion in *Foulger-Pratt* persuasively explains why the Court should find the FAA displaced here. In that case, the court recognized that "a generic choice of law clause is insufficient to displace the FAA's default rules." *Foulger-Pratt*, 779 F. Supp. 2d at 110. But there, the parties' agreement *also* included a clause stating "[t]his [a]greement to arbitrate shall be specifically enforceable pursuant to and interpreted under the laws of the District of Columbia." *Id.* at 110. The *Foulger-Pratt* court held that this language "specifically and

unambiguously evidences [the parties'] clear choice of D.C. law rather than the FAA to govern their agreement to arbitrate." *Id.* Notably, the Court rejected the argument that the agreement's "lack of specific reference to the D.C. arbitration statute demonstrates that the parties did not contemplate application of D.C. arbitration laws." *Id.* at 111. Here, by contrast, the parties have included **even more express** language than in *Foulger-Pratt*, as they have specifically identified the Florida Arbitration Code.[4] The same result—displacement of the FAA in favor of state arbitration law—should be reached here as well.

CVS's reliance on cases holding that the FAA applies to arbitration agreements that affect interstate commerce (and do not fall within several inapplicable exceptions in 9 U.S.C. § 1) is therefore misplaced.[5] Mot. 4. These cases only address contracts that are **silent** as to what arbitration law governs—federal or state. But where, as here, the parties expressly agreed that Florida arbitration law should govern, Florida arbitration law displaces the FAA.[6]

---

[4] In *Rintin*, the relevant agreement stated: "Any dispute which may arise from the interpretation, execution or termination of this agreement or from the breach thereof ... shall be submitted to arbitration ... **according to the provisions of the Florida International Arbitration Act** and in compliance with the rules of the American Arbitration Association (AAA)." *Rintin*, 476 F.3d at 1256. The Eleventh Circuit applied the Florida International Arbitration Act when reviewing an order confirming the arbitral award.

[5] None of CVS's cases address whether a contract's language displaces the FAA in favor of state arbitration law. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995), addresses when a contract evidences a transaction involving commerce within section 2 of the FAA, but does not address displacement of the FAA via agreement, like the Agreement here. *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020), held that the employees at issue there did not fall within the FAA because they fell within the exceptions (inapplicable here) provided in Section 1 of the FAA, 9 U.S.C. § 1, and thus did not address FAA displacement. *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 577 (Fla. 1st DCA 1999), is particularly inapt because the court held the arbitration provision at issue there to be unconscionable under Florida law and refused to enforce it. As with the prior cases, this decision did not address whether a contract expressly chose to displace the FAA. Finally, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), citing *Volt*, acknowledges that parties may choose to displace the FAA by agreement and, addressing an agreement to which the FAA indisputably applied, held that the FAA preempts a contracting party from avoiding arbitration under the FAA by asserting a defense of unconscionability under California law. The decision does not address whether the FAA has been displaced by agreement.

[6] To the extent CVS suggests that the FAA, where potentially applicable, preempts the Florida Arbitration Code, this argument would be incorrect. "The FAA contains no express pre-emptive provision nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 U.S. at 477. The FAA's preemptive reach is confined solely to "any state rule discriminating on its face against arbitration … [and] any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."

**B.      Under Florida Law, CVS Has Waived Any Right To Arbitrate.**

Because the Florida Arbitration Code applies to the Agreement, Florida law—not federal

common law—governs whether CVS has waived any right to arbitration, and Florida law is clear

that CVS's substantial and sustained participation in the litigation waived any rights to arbitrate.

When state arbitration law applies—and therefore the FAA does not apply—federal courts apply

state law related to waiver of arbitration rights. *See, e.g.*, *Smith v. Allstate Power Vac, Inc.*, 482 F.

Supp. 3d 40, 48-49 (E.D.N.Y. 2020) ("Where the FAA is not applicable, it follows that state

arbitration law should be applied, including with respect to the waiver by litigation analysis.")

(finding waiver under Michigan law); *Oliveira v. New Prime, Inc.*, 424 F. Supp. 3d 206, 208 (D.

Mass. 2019) (finding waiver under Missouri law where the Missouri Uniform Arbitration Act

applied to arbitration); *Travel Express Investments, Inc. v. Hemani*, No. 6:08-cv-01699-ORL-

35DAB, 2009 WL 10670424, at *3 (M.D. Fla. May 12, 2009) (applying Florida waiver law and

finding waiver).

Florida law, like federal law, contains a broad policy in favor of arbitration. *Roe v. Amica*

*Mut. Ins. Co.*, 533 So. 2d 279, 281 (Fla. 1988). But also like federal law, Florida law recognizes

that any right to arbitrate can be waived. *Raymond James Financial Servs., Inc. v. Saldukas*, 896

So. 2d 707, 711 (Fla. 2005). When analyzing waiver under Florida law, "[t]he essential question

is whether, under the totality of the circumstances, the defaulting party has acted inconsistently

with the arbitration right." *Id.* The Florida Supreme Court has held that "there is no requirement

for proof of prejudice in order for there to be an effective waiver of the right to arbitrate." *Id.*

Instead, "[a] party claiming waiver of arbitration must demonstrate: (1) knowledge of an existing

---

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). No such Florida rule discriminating against
arbitration exists here.

right to arbitrate and (2) active participation in litigation or other acts inconsistent with the right." *Inverrary Gardens Condo. I Ass'n, Inc. v. Spender*, 939 So. 2d 1159, 1161 (Fla. 4th DCA 2006); *see also O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.*, 944 So. 2d 181, 185 n. 4 (Fla. 2006) ("Waiver of the right to arbitration results from active participation in a lawsuit or from taking action inconsistent with that right.").

Both of those elements are easily satisfied here. ***First***, CVS Pharmacy Inc., as party to the Agreement is "legally charged with knowledge of its terms from the date it was signed." *Marine Env't Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003). This is because, under Florida law, "one who signs a contract is presumed to know its contents." *Addison v. Carballosa*, 48 So. 3d 951, 954 (Fla. 3d DCA 2010). So, too, with arbitration provisions specifically. Florida courts hold that a party to an agreement with an arbitration provision and their counsel have knowledge of the provision. *See, e.g.*, *Est. of Williams ex rel. Williams v. Manor Care of Dunedin, Inc.*, 923 So. 2d 615, 617 (Fla. 2d DCA 2006) (error to require showing that party seeking to compel arbitration had knowledge of its right to arbitrate where they were a party to the arbitration agreement); *Mora v. Abraham Chevrolet-Tampa, Inc.*, 913 So. 2d 32, 34 (Fla. 2d DCA 2005) (rejecting party's excuse that it failed to seek arbitration until two months after filing answer because party's attorney was unaware of arbitration agreement); *Breckenridge v. Farber*, 640 So. 2d 208, 211 (Fla. 4th DCA 1994) (rejecting argument that beneficiary to contract was not aware of the arbitration provision and finding waiver of a right to arbitrate); *Marthame Sanders & Co. v. 400 W. Madison Corp.*, 401 So. 2d 1145, 1145 (Fla. 4th DCA 1981) (same regarding signatory to contract); *see also Snelling & Snelling, Inc. v. Reynolds*, 140 F. Supp. 2d 1314, 1322 (M.D. Fla. 2001) (finding waiver under the FAA and holding that, under Florida law, a signatory is presumed to know the contents of a contract). For example, in *Marine*, the defendants argued that they were

unaware of an arbitration provision until their attorneys learned of the provision in a related contract through discovery. *Marine*, 863 So. 2d at 426. The Florida appellate court rejected this argument because the defendants were signatories to the contract. *Id.*

Florida law therefore forecloses CVS's argument that CVS was unaware of its right to arbitrate because it "only learned of the arbitration provision on December 9, 2021" after reviewing the Terminated Agreement to which CVS itself is a signatory and which was produced on October 16, 2020 as the first document in Florida Blue's document production. Mot. 2, 11, 13. Moreover, the two federal cases CVS cites for this proposition, *see* Mot. 13 & n.8, do not apply Florida law and, in any event, do not support CVS's argument that its asserted ignorance of an arbitration provision in the Agreement (which it signed) divests CVS of knowledge of any arbitration rights.[7] CVS therefore has knowledge of its right to arbitrate as of the date the Agreement was signed, April 9, 2001. *See* ECF No. 57-2 (Ex. 1) at BCBS-FL-00000018.

**Second**, CVS has, beyond question, actively participated in this litigation by filing an answer, propounding discovery (including to a non-party) and responding to discovery requests. "A party's responses to the litigation constitute active participation when they are an attack on the merits." *Sitarik v. JFK Med. Ctr. Ltd. Partnerships*, 11 So. 3d 973, 974 (Fla. 4th DCA 2009) (finding waiver of arbitration right where defendant answered a complaint, filed affirmative

---

[7] The *dicta* CVS cites from *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 976 (6th Cir. 2020) does not support its position. *See* Mot. 13 n.8. As a preliminary matter, the Sixth Circuit found that the defendant there **waived** any right to arbitrate **by filing a motion to dismiss that went to the merits of the plaintiff's complaint**. *Solo*, 947 F.3d at 976. CVS cites *dicta* where the Sixth Circuit theorized that a finding of waiver may be inappropriate if underlying case facts were unknown such that a defendant could not determine whether a particular agreement applied to the parties' conduct. *Id.* The court rejected the defendant's argument, and, in any event, nothing in *Solo* supports CVS's argument that a defendant can immunize itself from a finding of waiver by asserting that it had not read or was not aware of a contract to which it is a party. In *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 658, 661-62 (5th Cir. 1995), the defendant filed a motion to dismiss, which was denied, and then, a mere 18 days later filed a motion for a stay of proceedings pending arbitration **together with both its answer and a motion to stay discovery pending a ruling on the arbitration motion**. *Id.* at 658, 661. The defendant did not participate in discovery before raising its right to arbitrate. *Id.* at 661.

defenses, issued a subpoena, and propounded discovery). For example, filing "an answer to the complaint without demand for arbitration, constitutes an abandonment of the right to arbitration." *Breckenridge*, 640 So. 2d at 212 (citations omitted); *see also O'Flarity v. Trend Star Dev., Inc.*, 689 So. 2d 1297, 1297 (Fla. 4th DCA 1997) ("The filing of an answer is an act inconsistent with a subsequent demand to arbitrate."). Likewise, "'propounding discovery directed to the merits of pending litigation before moving to compel arbitration results in a waiver of the right to arbitration.'" *Versaille Sur La Mer Condo. Assoc., Inc. v. Lexington Ins. Co.*, No. 18-cv-1125-ORL-37TBS, 2018 WL 3827154, *4 (M.D. Fla. July 24, 2018) (finding waiver of appraisal/arbitration clause based on participation in five months of litigation) (citing *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 688 (Fla. 2d DCA 2009) (collecting cases)). *See also Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle Homeowners Ass'n, Inc.*, 102 So. 3d 722, 731 (Fla. 4th DCA 2012); *Olson Elec. Co. v. Winter Park Redevelopment Agenc*y, 987 So. 2d 178, 179 (Fla. 5th DCA 2008); *Estate of Orlanis ex rel. Marks v. Oakwood Terrace Skilled Nursing & Rehab. Ctr.*, 971 So. 2d 811, 812-13 (Fla. 3d DCA 2007).

CVS suggests that it has not waived any right to arbitrate because it asserted, as its twenty-third (23rd) affirmative defense in its Answer, a non-specific right to arbitrate. Mot. 11. This is incorrect. Merely listing a defense of arbitration in an answer is insufficient to avoid waiving that right under Florida law—all the more so where, as here, the vague defense is untethered to any party or contract. *Bared & Co. v. Specialty Maint. & Const., Inc.*, 610 So. 2d 1, 3 (Fla. 2d DCA 1992) (holding that answering without filing a demand for arbitration waives right to arbitrate); *Hansen v. Dean Witter Reynolds, Inc.,* 408 So. 2d 658, 659 (Fla. 3d DCA 1981) (holding that answering a complaint by asserting failure to arbitrate as affirmative defense, but without making a demand for arbitration, waives right to arbitrate). Furthermore, since raising that vague right,

CVS has actively participated in the merits of this litigation—actions which are unquestionably "inconsistent with" any right to arbitrate. Under the parties' express choice of Florida arbitration law, CVS has therefore waived any right to arbitrate.

This straightforward result fully embraces the FAA's broader purposes. "[The] FAA's primary purpose … [is] ensuring that private agreements to arbitrate are enforced according to their terms." *Volt*, 489 U.S. at 479; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985) ("[P]assage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered ….") (quoting legislative history). Although, as CVS notes, federal policy favors arbitration, "the federal policy favoring arbitration is not a free-standing ground upon which to remit parties to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995); *see also Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 57 (1995) ("[T]he FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties"). "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit." *Volt*, 489 U.S. at 479. Accordingly, "the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties." *First Options*, 514 U.S. at 947 (internal quotation marks and citation omitted). Here, enforcing the parties' agreement to arbitrate under the Florida Arbitration Code, rather than the FAA, is therefore entirely congruent with the FAA's own purposes—even if, as described above, Florida law compels finding that CVS waived any right to arbitrate.

**C.    Although Federal Law Does Not Apply, CVS Has Also Waived Its Right To Arbitrate Under Federal Law.**

Even were the Court to apply federal decisions addressing waiver of arbitration rights under the FAA, CVS has waived its right to arbitration.

***Active participation and inconsistent action***. CVS does not dispute that it has actively participated in this litigation and taken steps inconsistent with any right to arbitrate. Mot. 12. CVS instead argues, in essence, that its active participation in litigation by filing a motion to dismiss addressing the merits of Florida Blues claims, filing an answer and affirmative defenses also contesting the merits of Florida Blues' claims, serving and responding to written discovery, serving a subpoena, and engaging in discovery for approximately 18 months are insufficiently inconsistent with its arbitration rights to weigh in favor of finding waiver. But federal courts applying the FAA have found waiver for much less. *See, e.g.*, *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895-PKC-RER, 2021 WL 3884177, at *14 (E.D.N.Y. Aug. 31, 2021) (finding waiver after 20 months of litigation); *Leal v. Sinclair Broad. Grp., Inc.*, No. A-16-CV-679-LY, 2017 WL 1458810, at *4 (W.D. Tex. Apr. 25, 2017) (finding waiver where defendant filed a substantive motion to dismiss); *Salary Continuation Corp. v. Brown & Brown of Detroit, Inc.*, No. 6:11-CV-1698-ORL-36GJK, 2012 WL 12904726, at *3 (M.D. Fla. July 25, 2012) (finding waiver by attending a case management conference and preparing a case management report and filing and responding to motions).

CVS also argues that its decision to file a motion to dismiss on the merits does not constitute active participation inconsistent with its right to arbitration. Mot. 12-13. But the very case CVS cites in footnote 8 of its motion directly rejects CVS's position. In *Solo v. United Parcel Serv. Co.*, 947 F.3d 968 (6th Cir. 2020), the court of appeals held that where a defendant's "motion to dismiss was thoroughly enmeshed in the merits" because "[it] sought dismissal of all claims"

the defendant has waived its right to arbitrate. *Id.* at 975. *Solo* reasoned, citing other federal courts of appeals, that "a motion to dismiss that *seeks a decision on the merits* and an immediate and total victory in the parties' dispute is *entirely inconsistent with* later requesting that those same merits questions be resolved in arbitration." *Id.* (internal quotation marks and citations omitted).

The reason for this ruling makes perfect sense. CVS has availed itself of this Court's ability to grant an early dispositive motion to dismiss, whereas arbitration tribunals rarely, if ever, grant such motions. That is why *Solo* held that, "A party may not use a motion to dismiss to see how the case is going in federal district court, while holding arbitration in reserve for a second chance in another forum." *Solo*, 947 F.3d at 975 (internal quotation marks and citations omitted). CVS admits that its motion to dismiss sought dismissal on the merits, Mot. 13, not merely on "jurisdictional or quasi-jurisdictional grounds." *See Solo*, 947 F.3d at 975. As a result, CVS's merits-directed motion to dismiss weighs in favor of finding waiver of any arbitration rights.

*Solo*'s facts are also directly applicable here and persuasively support denial in this case. There, a district court granted the defendant's motion to dismiss, but that decision was reversed on appeal. *Id.* at 971. On remand, the defendant filed an answer raising arbitration as an affirmative defense, but only after six months of full discovery did the defendant finally move to compel arbitration. *Id.* Finding waiver, the court held that litigating the merits of plaintiff's claims, both in the district court and on appeal, and through participation in merits discovery, was inconsistent with its right to arbitration. *Id.* at 975-76. The court also rejected the defendant's argument that defendant's early suggestion of a potential right to arbitration (there, in a motion to dismiss) avoided waiver of any arbitration right. *Id. Solo* reasoned that "[a] party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *Id.* at 976 (citation omitted). Here CVS has also filed a motion to dismiss, noted in

15

its answer a potential right to arbitrate, and participated in active discovery in the meantime before filing a belated motion asserting its right to arbitrate. The Court should follow *Solo* and the cases cited therein to hold this conduct weighs in favor of holding that CVS waived any arbitration rights. *See also In re Citigroup, Inc.*, 376 F.3d 23, 27 (1st Cir. 2004) (noting that it is not sufficient to assert in an answer the right to arbitrate as an affirmative defense).

  ***Long delay***. Florida Blue filed its complaint on May 27, 2020, and CVS filed its motion asserting a right to arbitrate Florida Blue's claims on February 14, 2022. CVS does not attempt to dispute whether 20 months constitutes a long delay weighing in favor of waiver. CVS instead tries to move the goalposts by arguing that delay should be measured from the moment its counsel allegedly learned of the right to arbitrate (supposedly, on December 9, 2021). Mot. 13.

  CVS's asserted "actual knowledge" standard, however, has no basis in law. As an initial matter, and as described above, CVS's two citations for its novel actual knowledge standard, *see* Mot. 13 & n.8, do not support such a standard at all. *See supra* note 7. Indeed, the First Circuit has held that "constructive notice" is a sufficient point at which to begin to measure delay. *Citigroup*, 376 F.3d at 27. And multiple courts have held that a signatory, like CVS, is deemed to have knowledge of its own agreements and the arbitration provisions on those agreements. *See supra* pp. 10-11; *see also Steiner v. Horizon Moving Sys., Inc.*, No. EDCV 08-682-VAP, 2008 WL 4822774, at *3 (C.D. Cal. Oct. 30, 2008) ("Plaintiff at least had constructive, if not actual, knowledge of the existing right to compel arbitration upon signing the agreement allegedly containing the arbitration provision."); *Snelling*, 140 F. Supp. at 1322 (applying Florida law and finding knowledge of a right to arbitration because the party signed the contract). CVS therefore

16

cannot use its own professed ignorance to avoid scrutiny of its approximately 20-month delay in asserting arbitration rights.[8]

*Prejudice*. CVS argues that Florida Blue has not suffered any prejudice because "the same law firm represents all 22 Plaintiffs in these consolidated cases." Mot. 15. But CVS does not identify any principle or precedent that would justify holding that, where multiple plaintiffs exist, a defendant can delay asserting its arbitration rights as against one of those plaintiffs without causing any prejudice. Florida Blue has contributed to the effort, undertaken on its behalf, to draft a complaint for this court, research applicable causes of action, participate in hearings, engage Rhode Island counsel, and participate in discovery in this forum. Had CVS asserted its rights early in the case, much of those efforts on Florida Blue's behalf could and would have been avoided.

Additionally, were Florida Blue forced to arbitrate its claims, two years after filing a complaint in this Court, its ability to resist CVS's statute of limitations defense could be severely prejudiced. CVS would assert the same defense against Florida Blue were the parties forced to arbitrate some or all of the conduct underlying Florida Blue's claims. In that potential arbitration, CVS would, in turn, argue that the relevant date for statute-of-limitations purposes is the filing date of any future arbitration—not May 27, 2020, when Florida Blue filed its initial complaint in this case.[9] But had CVS timely asserted any arbitration rights, Florida Blue would not have been prejudiced by the expiration of two additional years relevant to CVS's statute-of-limitations defense. *See Garg v. VHS Acquisition Subsidiary No. 7*, No. 4:20-CV-40060-TSH, 2021 WL 1873962, at *11 (D. Mass. Mar. 9, 2021) (finding prejudice where dismissal would likely have

---

[8] CVS's reliance on the Court's opinion in *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182 (D.R.I. 2021), is misplaced. There, the Court found that a six-month delay between the conclusion of a contractually-mandated dispute resolution process and Caremark's motion asserting arbitration rights was not particularly long. Here, by contrast, CVS waited 20 months to assert any rights to arbitration.

[9] To be clear, Florida Blue disputes that this argument is correct. But even having to face it prejudices Florida Blue.

negative statute of limitations consequences), *report and recommendation adopted*, No. 4:20-CV-40060-TSH, 2021 WL 1220887 (D. Mass. Mar. 31, 2021); *Vega v. Cont. Cleaning Maint.*, No. 03 C 9130, 2006 WL 1554383, at *5 (N.D. Ill. June 1, 2006) (holding arbitration right waived after delay of two years likely prejudiced plaintiffs regarding the statute of limitations).

In sum, CVS should not be permitted, though its dilatory conduct, to prejudice Florida Blue's ability to resist that defense.

## II.   AT MOST, ONLY TRANSACTIONS THAT OCCURRED DURING THE AGREEMENT ARE ARBITRABLE.

Even if this Court were to find Florida Blue's claims to be arbitrable under the Terminated Agreement's arbitration clause (which it should not), it should dismiss in favor of arbitration ***only*** those claims arising during the effective period of the Agreement. Claims arising after the Agreement ended are outside the arbitration clause, and the Court should permit those claims to proceed in this litigation in tandem with discovery efforts that have been consolidated across this action and four related actions.

Under Florida law, resolution of the question of whether an arbitrable issue exists under the three-part analysis for determining whether to compel arbitration is contingent upon a "significant relationship" or "nexus" "between the claim and the agreement containing the arbitration clause." *Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Grp., LLC*, 124 So. 3d 968, 972-73 (Fla. 3d DCA 2013) (declining to compel arbitration where no nexus found between claims in dispute and agreement containing arbitration clause).[10] Such a nexus is present "if the claim presents circumstances in which the resolution of the disputed issue requires either reference

---

[10] Under Florida law, three elements must be considered in ruling on a motion to compel arbitration: "(1) whether a valid arbitration agreement exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." *Careplus*, 124 So. 3d at 971 (internal quotation marks and citation omitted).

to, or construction of, a portion of the contract." *Id.* at 973 (internal quotation marks and citations omitted). "More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship." *Dewees v. Johnson*, 329 So. 3d 765, 770 (Fla. 4th DCA 2021) (internal quotation marks and citation omitted).[11]

Here in the First Circuit, a claim does not fall under an arbitration clause where liability for those claims does not arise from the fact that the "[the parties] entered into and attempted to perform the contract." *Combined Energies v. CCI, Inc.,* 484 F. Supp. 2d 186, 189 (D. Me. 2007), *aff'd,* 514 F.3d 168 (1st Cir. 2008).[12]

Under any of these standards, Florida Blue's post-2011 claims are not arbitrable under the Terminated Agreement's arbitration clause. The claims against CVS in this action arise from inflated drug prices submitted by CVS during the operation of the HSP program and its successor, the VPSC program—a period spanning from November 2008 to the present. The Terminated Agreement was in effect only through August 2011. To the extent any contractual terms have any bearing on post-August 2011 claims, reference would need to be made to the CVS-PBM and Florida Blue-PBM agreements in effect during the post-August 2011 period. Because no reference to or interpretation of the Terminated Agreement is necessary to resolve Florida Blue's post-August 2011 claims, the nexus between those claims and the Agreement that is required to render them arbitrable does not exist. *See Careplus*, 124 So. 3d at 973.

---

[11] The Eleventh Circuit has been more unequivocal in holding that it cannot "compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties." *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) (finding lower court "properly refused to compel arbitration of claims arising from disputes which arose outside of the effective dates of arbitration agreements").

[12] Notably, the arbitration clause in *Combined Energies*, which provided for the arbitration of "[a]ll claims, disputes and matters in question arising out of, or relating to [the agreement]," was even more expansive in scope than the clause in dispute here. *Combined Energies*, 484 F. Supp. 2d at 189.

Likewise, CVS cannot (and does not) claim that Florida Blue's post-August 2011 claims arise "because [the parties] entered into and attempted to perform the contract." *Combined Energies,* 484 F. Supp. 2d at 189. When CVS submitted inflated prices for purchases made by Florida Blue's members after August 2011, it was not "acting pursuant to the terms" of the Terminated Agreement. *Id.*

Thus, the post-August 2011 claims can be distinguished from the disputed claims in *FPE Foundation v. Cohen*, 801 F.3d 25 (1st Cir. 2015), upon which CVS principally relies. The First Circuit held that the intervenor's claim in *FPE* "unquestionably" related to the trust agreement containing the arbitration clause because the claim hinged on a legal theory requiring an interpretation of the powers granted to the trustees under the agreement. *Id.* at 33. It is not the case here, as CVS claims, that "none [of Florida Blue's causes of action] could be litigated without referencing the U&C definition in the 2000 Agreement." Mot. 9. This U&C definition would not govern Florida Blue's claims that CVS submitted inflated prices for prescription drug purchase made by members ***after*** August 2011.

Tellingly, CVS itself appears to admit that the terms of the Terminated Agreement are relevant for CVS's liability only during the years the contract was in effect. *See* Mot. 9-10 ("Florida Blue cannot reasonably calculate overcharges for years while the 2000 Agreement was in effect—2008 through 2011—without considering the pricing terms of the Agreement"). CVS further concedes, albeit more vaguely, that the U&C definition in the Terminated Agreement was only "operative" "as of CVS's launch of HSP in 2008 and for the next several years." *Id.* 8. Yet CVS still purports to claim that "Section 16.1's language encompasses Florida Blue's claims before the Court." *Id.* 10. The Court should not countenance these attempts to casually shoehorn all of Florida Blue's claims into the arbitration clause.

The Court therefore should permit Florida Blue's post-August 2011 claims to proceed in this forum. In determining whether to stay the litigation of non-arbitrable claims, this Court considers "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *Narragansett Elec. Co. v. Constellation Energy Commodities Grp., Inc.,* 563 F. Supp. 2d 325, 331 (D.R.I. 2008) (internal quotation marks and citation omitted).[13] The first—"the risk of inconsistent rulings"—is the primary factor. *Id.* No such risk is present here. Because the Terminated Agreement has no bearing on the operative U&C definition or CVS's pricing obligations to Florida Blue after August 2011, resolution of Florida Blue's post-August 2011 claims is not dependent on any arbitrable pre-August 2011 claims. Likewise, CVS's potential liability to Florida Blue under any CVS-PBM or Florida Blue-PBM contracts in the post-August 2011 period is not conditional upon CVS's liability under the Terminated Agreement. *See id.* at 332.[14] On the other hand, staying a portion of Florida Blue's claims while coordinated discovery by plaintiffs' counsel continues in this action and the four related actions with which this action has been consolidated risks inefficiency and waste of resources.

Accordingly, to the extent this Court grants CVS's motion, it should be granted only as to Florida Blue's claims arising through August 31, 2011. The remainder of Florida Blue's claims should be permitted to proceed.

---

[13] This Court has acknowledged that "piecemeal litigation" is sometimes the inevitable result of enforcing arbitration agreements. *Narragansett,* 563 F. Supp. 2d at 331 (citations omitted).

[14] Even if certain factual and legal issues are found to be common to Florida Blue's pre-August 2011 and post-August 2011 claims, such "evidentiary overlap" alone does not warrant a stay of non-arbitrable claims. *In re Tyco Int'l, Ltd.,* No. 02-1335-B, 2003 WL 23112341, at *3 (D.N.H. Dec. 29, 2003).

**CONCLUSION**

Under Florida arbitration law (which governs) as well as under the FAA, CVS's nearly two-year delay in invoking arbitration, while litigating vigorously in court, is a waiver of any purported right CVS claims to arbitrate against Florida Blue. And even if the Court were to hold otherwise, dismissal is inappropriate because Florida Blue's post-August 2011 claims are not arbitrable and should be litigated here.

Dated: February 28, 2022                                  Respectfully Submitted,

                                                         */s/ Christian R. Jenner*

                                         Christian R. Jenner (#7731)
                                         Paul M. Kessimian (#7127)
                                         PARTRIDGE SNOW & HAHN LLP
                                         40 Westminster Street, Suite 1100
                                         Providence, RI 02903
                                         Tel: (401) 861-8200
                                         Fax: (401) 861-8210
                                         cjenner@psh.com
                                         pkessimian@psh.com

                                         Robert B. Gilmore (admitted *pro hac vice*)
                                         Jed Wulfekotte (admitted *pro hac vice*)
                                         Michael A. Petrino (admitted *pro hac vice*)
                                         Shawna Bray (admitted *pro hac vice*)
                                         Susie Kim (admitted *pro hac vice*)
                                         Joshua Elliott (admitted *pro hac vice*)
                                         STEIN MITCHELL BEATO
                                           & MISSNER LLP
                                         901 15th Street, NW Suite 700
                                         Washington, DC 20005
                                         Tel: (202) 737-7777
                                         Fax: (202) 296-8312
                                         rgilmore@steinmitchell.com
                                         jwulfekotte@steinmitchell.com
                                         mpetrino@steinmitchell.com
                                         sbray@steinmitchell.com
                                         susie.kim@steinmitchell.com
                                         jelliott@steinmitchell.com

                                         *Attorneys for Plaintiffs Blue Cross and Blue Shield*
                                         *of Florida, Inc. and Health Options, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing document to be filed through the ECF system on February 28, 2022, and that I understand it will be sent electronically to all counsel of record.

*/s/ Christian R. Jenner*