UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br>Defendant. | No. 20-cv-236-JJM-PAS<br>No. 20-cv-458-JJM-PAS<br>No. 20-cv-507-JJM-PAS<br>No. 20-cv-520-JJM-PAS<br>No. 21-cv-223-JJM-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

This Order resolves five motions in limine pending before the Court. ECF Nos. 110-11, 114-16. This action consists of five consolidated cases[1] wherein thirteen different health insurers associated with Blue Cross and Blue Shield ("Blue Cross")[2]

---

[1] The cases are as follows: (1) *Blue Cross & Blue Shield of Ala. v. CVS Health Corp.* ("*BCBS*"), No. 20-cv-00236-JJM-PAS; (2) *Horizon Healthcare Servs., Inc. v. CVS Health Corp.*, No. 20-cv-00458-JJM-PAS; (3) *Highmark Inc. v. CVS Pharmacy, Inc.*, No. 20-cv-00507-JJM-PAS; (4) *Cap. BlueCross v. CVS Health Corp.*, No. 20-cv-00520-JJM-PAS; and (5) *CareFirst of Md., Inc. v. CVS Health Corp.*, No. 21-cv-00223-JJM-PAS. All ECF Nos. in this Order correspond with the lead case, *BCBS*, No. 20-cv-236-JJM-PAS.

[2] In total, Blue Cross is made up of twenty-two different legal entities, but they are categorized into thirteen health insurers, or groups of health insurers, as follows: (1) Blue Cross and Blue Shield of Alabama ("BCBS-AL"); (2) Blue Cross and Blue Shield of Florida ("BCBS-FL"); (3) Blue Cross and Blue Shield of Kansas City ("BCBS-KC"); (4) Blue Cross and Blue Shield of Louisiana ("BCBS-LA"); (5) Blue Cross and Blue Shield of Minnesota ("BCBS-MN"); (6) Blue Cross and Blue Shield of North Carolina ("BCBS-NC"); (7) Blue Cross and Blue Shield of North Dakota ("BCBS-ND"); (8) Blue Cross and Blue Shield of South Carolina ("BCBS-SC"); (9) Capital; (10) CareFirst; (11) HealthNow; (12) Highmark; and (13) Horizon. ECF No. 119 ¶¶ 7-72; ECF No. 139 ¶¶ 7-72.

accuse CVS Pharmacy, Inc. ("CVS")[3] of causing them to overpay for prescription drugs. Blue Cross alleges that CVS, through the Health Savings Pass ("HSP") program and the Value Prescription Savings Card ("VPSC") program, provided prescription drugs to cash-paying customers at discounted prices and failed to report those prices as their usual and customary ("U&C") prices. Blue Cross argues, among other things, that federal Medicare and Medicaid regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS"), an agency within the U.S. Department of Health and Human Services ("HHS") required CVS to do so. Precisely what constitutes U&C pricing is a key issue here. *See Blue Cross & Blue Shield of Ala. v. CVS Health Corp.* ("*BCBS*"), Nos. 20-236 WES, 20-458 WES, 20-507 WES, 20-520 WES, 2021 WL 6808380, at *1 (D.R.I. July 6, 2021) ("U&C is the governing metric, and its definitions are at the heart of these cases.").[4]

Blue Cross and CVS have now cross-moved for summary judgment. *See* ECF Nos. 108, 113. They have also filed various evidentiary motions, seeking to exclude some or all of the testimony being offered by the parties' respective experts. *See* ECF Nos. 110-11, 114-16. The Court turns its attention now to the parties' evidentiary motions.

---

[3] The parties stipulated to dismiss Defendant CVS Health Corporation from this action. ECF No. 100; *see also* Text Order (May 15, 2025) (entering stipulation).

[4] In an Order issued on July 6, 2021, Judge William E. Smith largely denied CVS's Motion to Dismiss this consolidated case. *See BCBS*, 2021 WL 6808380, at *5. Judge Smith retired from judicial service on January 21, 2026, and this case was later reassigned to the current presiding judge. *See* Text Order (Feb. 11, 2026).

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Fed. R. Evid. 702. A district court plays a "gatekeeping role" in determining what expert testimony will come in or be kept out of trial. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). As a threshold matter, the Court must first ensure that "the witness is sufficiently qualified by 'knowledge, skill, experience, training, or education' to give his proffered opinion." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 152 (D. Mass. 2023) (quoting Fed. R. Evid. 702). If the witness is deemed qualified, the Court must next decide whether the witness' testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "Pertinent evidence based on scientifically valid principles will satisfy those demands." *Id.*

## II. DISCUSSION

### A. ECF No. 110 – Blue Cross' Motion in Limine to Exclude Expert Opinions of Dr. W. David Bradford

CVS retained Dr. W. David Bradford to provide expert testimony pertaining to the healthcare industry (including Medicare and Medicaid), as well as to review and respond to opinions being proffered by one of Blue Cross' healthcare industry experts, Dr. Adam E. Block. *See* ECF No. 132 at 7.[5] In its motion, Blue Cross argues that Dr. Bradford's testimony should be excluded because he "lack[s] . . . direct experience in

---

[5] Unless otherwise specified, each pincite corresponds to the PageID # found at the top of each document.

the health care industry" and because he "provides no bridge between his background and his ultimate conclusion." ECF No. 110-1 at 6-7.

**1. Qualifications**

Beginning with its first argument, Blue Cross takes issue with Dr. Bradford having "spent his professional life in academia" but having "never (1) been a pharmacist, (2) worked at pharmacies, [Pharmacy Benefit Manager ("PBMs")], or health plans, or (3) held any role in which he has been responsible for implementing Medicare Part D guidance for a company or ensuring compliance with CMS pricing or reporting requirements." *Id.* at 7. "All true," CVS concedes, though it also asserts that "Dr. Bradford's general experience with the pharmacy industry, and particular experience with [Medicare Part D] . . ., more than qualifies" him. ECF No. 132 at 1, 7.

CVS has the better of the argument, given that Blue Cross takes too narrow a scope of the rules governing the admissibility of evidence. "Rule 702 has been interpreted liberally in favor of the admission of expert testimony," and thus "expert witnesses need not have overly specialized knowledge to offer opinions." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (internal citations omitted). Indeed, "experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Santos v. Posadas De P.R. Assocs., Inc.*, 452 F.3d 59, 63 (1st Cir. 2006). "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases

enumerated in Rule 702—knowledge, skill, experience, training, or *education*." *Id.* at 64 (emphasis added) (citations omitted).

There is no question that Dr. Bradford has relevant educational experience with respect to the subjects at issue here. For decades, he has served as a health economist, teaching courses and performing research on issues involving Medicare, Medicaid, and U&C pricing. *See* ECF No. 132 at 8. Several of his classes specifically cover pharmaceutical pricing, discount card programs, and pharmacy agreements with PBMs. *Id.*

This is sufficient experience for Dr. Bradford to provide expert testimony on the healthcare industry. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (instructing courts to ensure reliability and relevancy of expert testimony by "mak[ing] certain that an expert, whether basing testimony upon *professional studies or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

**2. Reliability**

Turning to Blue Cross' second argument, the Court does not agree that "Professor Bradford offers no explanation as to how his experience leads to the conclusions that he reaches." ECF No. 110-1 at 12. To be sure, as for the issue of reliability, courts are not required "to admit opinion evidence that is connected to

existing data only by the *ipse dixit* of the expert."[6] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). But that is not what Dr. Bradford attempts to here.

Rather, he expressly states in his expert report that, "[i]n reaching [his] opinions, [he] reviewed a variety of publicly available materials and nonpublic materials produced through discovery." ECF No. 110-3 at 4. Contrary to Blue Cross' assertions, Dr. Bradford "bridges" his conclusions to evidence: He supplements his report with footnotes, which identify the citations to materials that he relied on to form his conclusions. *See generally* ECF No. 110-3; *see also id.* at 49 (displaying the "Appendix B: Materials relied upon" section of Dr. Bradford's report).

Blue Cross argues that Dr. Bradford's opinions "are almost entirely supported solely by [his] interpretation of the meaning of laws and regulations, and his view on their effect on health care industry participants." ECF No. 110-1 at 9. But it is important to note that "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). "The proponent of the evidence must show only that 'the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.'" *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Ruiz-Troche*, 161 F.3d at 85).

---

[6] *Ipse dixit* is Latin for "he himself said it." *Ipse Dixit*, Black's Law Dictionary (9th ed. 2009). It is often used to convey that something is "asserted but not proved." *Id.*

Here then, Dr. Bradford's assessment of the situation may or may not be correct. Even so, what truly matters is whether he has arrived at his conclusion using a "scientifically sound and methodologically reliable" approach. *Milward*, 639 F.3d at 15. The Court finds that he has satisfied this threshold inquiry.

### B. ECF No. 111 – Blue Cross' Motion in Limine to Exclude Expert Opinions of Mr. Brett Barlag

CVS retained Brett Barlag to offer expert testimony on, among other things, claims data analysis and damages. ECF No. 133 at 4, 13. Blue Cross has moved to exclude two types of opinions being offered by Mr. Barlag: (1) his opinions (Opinions 1, 3, and 4) pertaining to his cash transaction data analysis; and (2) his opinion (Opinion 6(b)) pertaining to his damages calculation. ECF No. 111-1 at 5-6.

#### 1. Data Analysis

Blue Cross claims that "Mr. Barlag's purported comparisons of CVS's HSP, VPSC, and non-discount program cash categories are unreliable and irrelevant expert opinions and should not be permitted at trial." ECF No. 111-1 at 11. Blue Cross contends that Mr. Barlag's opinions "bear[ ] on the liability question at the heart of this case: should CVS have submitted its HSP and VPSC prices as U&C?" *Id.* at 12. According to Blue Cross, however, Mr. Barlag does not "identify a governing conception of U&C underlying his analyses, rendering his opinions unreliable and irrelevant." *Id.*

CVS claims that Blue Cross "misunderstands" Mr. Barlag's role, claiming that "[h]e is not a liability expert, but a pharmacy claims data expert." ECF No. 133 at 13. CVS contends that it "is not offering him to educate the jury about what they should

find the phrase 'usual and customary' means," but instead so that CVS may "fully defend itself at trial." *Id.* at 12-13. CVS would like "to rebut[ ] a variety of [Blue Cross'] arguments such as (1) that CVS's [HSP] transactions and ScriptSave [VPSC] transactions are 'cash' transactions (Opinions 1 and 4); and (2) that the [VPSC] was a continuation of the [HSP] program by another name (Opinion 3)." *Id.* at 4-5.

As the parties' numerous statements of disputed facts show, the two issues that CVS reference are among the many facts in disputes between the parties. *See, e.g.*, ECF No. 129 ¶ 2 ("CVS disputes that the prices available through [HSP] or the [VPSC] were 'cash' prices."); ECF No. 156 ¶ 46 ("CVS disputes that ScriptSave's [VPSC] 'replaced' [HSP]. The two programs were owned and controlled by different companies (ScriptSave vs. CVS).").

And, of course, one of Rule 702's requirements is that expert testimony "'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo non-helpful." *Id.* (citations omitted); *see also United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

Viewed from this lens, Mr. Barlag's opinions are relevant because they could assist the jury in resolving key factual disputes between the parties. *See Daubert*, 509 U.S. at 591; *Downing*, 753 F.2d at 1242. Blue Cross' concerns about Mr. Barlag

failing to "identify a governing conception of U&C," ECF No. 111-1 at 12, are misplaced, given that his testimony does not relate to that subject matter. The Court therefore declines to exclude Mr. Barlag's Opinions 1, 3, and 4.

**2. Damages Calculation**

Blue Cross also seeks to exclude Mr. Barlag's opinion (Opinion 6(b)) relating to his "alternate damages calculation." ECF No. 111-1 at 5-6. He offers this opinion in response to an opinion proffered by Blue Cross' own damages expert, Mr. Michael Petron. *Id.* at 9. Blue Cross asserts that Mr. Barlag's damages calculation lacks "a sound methodology" and serves as "mere *ipse dixit*." *Id.* at 14-15. CVS counters, arguing that Mr. Barlag's opinion "goes to the weight" of his testimony, "not its admissibility." ECF No. 133 at 17.

To start, a court's "inquiry into the overall reliability of a proffered expert's methodology" is a "flexible" one. *Ruiz-Troche*, 161 F.3d at 81. A "court must have 'considerable leeway' in both 'how to determine reliability' and 'its ultimate conclusion.'" *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 152-53). With respect to ruling on a motion to exclude a damages experts, the First Circuit has recognized that courts have "ample discretion in devising the appropriate criteria for its determination on a case by case basis." *Irvine v. Murad Skin Rsch. Lab'ys, Inc.*, 194 F.3d 313, 320 (1st Cir. 1999).

Mr. Barlag has offered up a reliable way of calculating damages. As CVS notes, Mr. Barlag used the same methodology that Mr. Petron relied on, but he added

another step to account for CVS's cash transactions—a step that CVS argues is essential to calculating damages in this particular case. ECF No. 133 at 16. And CVS avers that its methodology is "repeatable and replicable," which are hallmarks of reliability for the purposes of the *Daubert* analysis. *See, e.g.*, *United States v. Aceituno*, 699 F. Supp. 3d 179, 192 (D.N.H. 2023) (finding expert's methodology to be "sufficiently reliable" in part because the expert was able to reproduce her analysis and "tak[e] the court through the details of each step in her analysis"); *United States v. Hebshie*, 754 F. Supp. 2d 89, 125 (D. Mass. 2010) (recognizing that, in determining whether a theory or technique is scientific knowledge for the purposes of *Daubert*, "reproducibility is the sine qua non of 'science'"). Accordingly, the Court also declines to exclude Mr. Barlag's Opinion 6(b).

### C. ECF No. 114 – CVS's Motion in Limine to Limit the Testimony of Blue Cross' Expert Dr. Adam Block

Blue Cross retained Dr. Adam Block "to opine on the impact of CMS regulatory and sub regulatory guidance in the pharmaceutical sector on the issues in this case," "to review and interpret internal CVS analyses estimating the financial impact of reporting HSP prices and U&C," and "to opine on how excluding discounted prices (such as the HSP prices) from reported U&C prices affect third-party reimbursements." ECF No. 114-2 at 6. CVS has moved to exclude four types of opinions being offered by Dr. Block: (1) testimony about how CMS interprets the phrase "Usual and Customary" and/or how to interpret that definition as it appears at 42 C.F.R. § 423.100; (2) testimony about whether the HSP price and/or the VPSC price constitutes U&C pricing on Medicare Part D prescriptions; (3) testimony about

whether it is reasonable for health plans with Medicare Part D and Medicare Advantage enrollees, as well as the PBMs that support them, to expect pharmacies to submit U&C prices that align with CMS definitions and guidance; and (4) testimony about the VPSC program in general.[7] ECF No. 114 at 6. Blue Cross counters, arguing that Dr. Block's testimony permissibly focuses "on the impact the regulatory framework has on the industry's understanding of pharmaceutical pricing." ECF No. 135 at 1.

**1. Legal Opinions**

As a general rule, "'[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (quoting *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)). Thus, "purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge," and "expert testimony on such purely legal issues is rarely admissible." *Id.*

That said, "it is often difficult to draw the line between what are questions of law, what are questions of fact, and what are mixed questions." *Id.* at 100 (citations omitted). "[T]he definition of what is law and what is application or practice may be difficult to ascertain," particularly "when the issues involve not only a statute and formally promulgated regulations, but also guidelines, handbooks, advisory rulings,

[7] Blue Cross concedes that it "only intend[s] to offer testimony from Dr. Block applicable to CVS's Health Savings Pass or discount programs / discount cards in general, and do[es] not intend to offer any testimony from Dr. Block specifically concerning the VPSC." ECF No. 135 at 2 n.2. As a result, the Court need not review this part of CVS's motion.

interpretive bulletins, general counsel's letter opinions, informational notices and similar accoutrements of the modern bureaucratic state." *Id.* Indeed, there may be "instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms . . . permits some testimony seemingly at variance with the general rule." *Id.* at 100-01.

Somewhat relatedly, an expert is permitted to opine on industry standards and practices. *See Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006) ("[I]n general, the customs and practices of an industry are proper subjects for expert testimony."); *Levin*, 459 F.3d at 79 ("Expert testimony on industry standards is common fare in civil litigation."). But while "[t]estimony from an expert that describes industry practices may incorporate the expert's 'understanding of the law,' . . . 'the expert cannot testify as to what the law requires.'" *Meadows at Mainstone Farm Condo. Tr. v. Strathmore Ins. Co.*, No. 16-12546-MBB, 2018 WL 4696745, at *15 (D. Mass. Sept. 28, 2018) (quoting *Bacchi v. Mass. Mut. Life Ins. Co.*, No. 12-cv-11280-DJC, 2016 WL 1170958, at *3 (D. Mass. Mar. 23, 2016)).

As other courts within this circuit have recognized, this is not exactly the clearest of standards. *See Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 358 (D. Mass. Feb. 14, 2008) ("The line between testimony regarding what the law requires and testimony describing how an industry practice typically operates is not always clear."); *B.D. v. Ayotte*, No. 21-cv-00004-PB, 2025 WL 815200, at *20 (D.N.H. Mar. 14, 2025) ("The line between what constitutes testimony concerning industry

practices and what constitutes testimony concerning what the law requires is somewhat murky[.]").

However, the First Circuit's decision in *Pelletier v. Main St. Textiles, LP* does offer some guidance. In that case, the court considered, among other things, whether a plaintiff's expert was permitted to testify about the applicability of Occupational Safety and Health Administration ("OSHA") regulations to the defendants' conduct. *Id.* at 54. As the court observed, the district court "acted well within its discretion in excluding expert testimony about the applicability of OSHA regulations," explaining that it rightfully did so to avoid "imping[ing] on the roles of the judge and the jury . . . and to avoid jury confusion." *Id.* at 55. In addition, because the plaintiff had offered the testimony "to show what the regulations meant, not to show what he thought they meant," the testimony was properly excluded. *Id.*

Applying these standards here, at least some of Dr. Block's proffered opinions cross the line into inadmissibility territory. For instance, in his report, Dr. Block writes as follows:

> CMS has issued detailed regulations and guidance defining how prescription drug costs *must be* reported, adjudicated, and reimbursed under Medicare and Medicaid. These *mandates* ensure there is a competitive market for pharmaceuticals and a uniform methodology for drug plan payments.

ECF No. 114-2 at 10 (emphasis added). He also states: "CMS retains the authority to impose U&C-based payment safeguards even in a framework that protects private market negotiations by *requiring compliance* through administrative rules and contract enforcement mechanisms." *Id.* at 20 (emphasis added). And at the conclusion of his report, Dr. Block writes:

> Across both government and commercial sectors, many pharmaceutical contracts rely on U&C pricing, which *requires* pharmacies to submit complete and accurate transaction data. Health plans contracted with CVS on the basis of U&C pricing, and CVS was *obligated* to submit accurate U&C prices to those plans. CMS clearly defined which transactions were *required* to be included, yet CVS deliberately excluded a category of transactions.

*Id.* at 22 (emphasis added).

Moreover, in his rebuttal report, Dr. Block writes that "CMS directly articulates how U&C pricing operates when a pharmacy offers a discounted cash prices," and that "CMS's answer was unambiguous; the lowest price the pharmacy offers to the public is its U&C price." ECF No. 114-5 at 5. He also states that, "[u]nder CMS's framework, when a pharmacy offers multiple cash prices for the same drug on the same day, the lowest such price constitutes U&C." *Id.*

Dr. Block's opinions strike the Court as legal conclusions as to what Medicare and Medicaid regulations require for pharmaceutical pricing. It should be noted that CVS vigorously disputes that these regulations provide any such requirement for pharmacies. *See, e.g.*, ECF No. 128 at 15 ("[T]he federal government does not set or control pharmacy prices in Medicare Part D or managed Medicaid."). "An expert cannot simply opine as to his or her view of a disputed point of law, and competing experts cannot offer competing legal opinions." *Adams v. New England Scaffolding*, No. 13-12629-FDS, 2015 WL 9412518, at *6 (D. Mass. Dec. 22, 2015) (citation omitted).

Nor does the Court view these opinions as particularly helpful to the jury, as Blue Cross suggests. *See* ECF No. 135 at 1 (arguing that Dr. Block's "testimony is

both distinct from the judge's role on the law and helpful to the jury"). Rather than seeking to help the jury understand how the at-issue regulations impact the pharmaceutical industry, Dr. Block's testimony "seeks instead to convince the jury" that the regulations create obligations that pharmacies must meet. *United States v. Reyes-Vizcarrando*, No. 19-481 (SCC), 2022 WL 600822, at *2 (D.P.R. Feb. 28, 2022). This is an improper use of expert testimony.

As such, Dr. Block is precluded from offering legal opinions as to what federal law and regulations (including 42 C.F.R. § 423.100) require pharmacies to do. By extension, Dr. Block may not testify that federal law and regulations required CVS to submit HSP and VPSC prices as U&C prices. These are issues that the Court must decide, not Blue Cross' expert. *See Nieves-Villanueva*, 133 F.3d at 100.

**2. Qualifications**

As Blue Cross attempted to do with Dr. Bradford, CVS similarly attempts to attack Dr. Block with respect to his qualifications to testify about the "reasonable expectations" of health plans, PBMs, and pharmacies in non-Medicare Part D transactions. ECF No. 114 at 19. CVS asserts that Dr. Block has only limited experience working in a hospital system that dealt with Medicare benefits and that he lacks any experience working with commercial entities and, more specifically, pharmacies. *Id.* at 20-21.

The Court finds Dr. Block to be sufficiently qualified to testify about commercial healthcare transactions. This time, it is CVS that takes too narrow a scope of Rule 702, which, again, "liberally" favors the admission of expert testimony.

*Levin*, 459 F.3d at 78. Dr. Block, like Dr. Bradford, has served as a health economist for two decades, and he too teaches courses on health policy and management. ECF No. 135 at 10. He has significant public and private sector experience, which includes "managing the pharmaceutical costs of a health plan," "directly negotiat[ing] with a PBM on behalf of a health plan," and even "working for CMS" itself. ECF No. 114-2 at 5-6. Taken together, these professional and educational experiences render Dr. Block sufficiently qualified to testify about the "reasonable expectations" issue. *See Santos*, 452 F.3d at 64; *Kumho Tire*, 526 U.S. at 152.

### D. ECF No. 115 – CVS's Motion in Limine to Exclude Two Opinions Offered by Bob Beckley

Blue Cross' expert, Mr. Bob Beckley, offers testimony about the VPSC program and about whether the HSP program involved a "fake adjudication." ECF No. 115 at 1. CVS argues that these two opinions should be excluded because they lack a reliable foundation and because they rest on erroneous factual assumptions. *Id.* Blue Cross argues that Mr. Beckley's opinions are proper and that they should be presented to a jury. ECF No. 134 at 2.

#### 1. Reliability

"Rule 702 requires that expert testimony be based on 'sufficient facts or data.'" *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 99 (1st Cir. 2020) (quoting Fed. R. Evid. 702(b)). "Exactly what is involved in 'reliability' . . . must be tied to the facts of a particular case." *Milward*, 639 F.3d at 14-15 (quoting *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25–26 (1st Cir. 2006)).

CVS accuses Mr. Beckley of "rely[ing] solely" on the allegations contained in Blue Cross' complaint when offering opinions on the VPSC program. ECF No. 115 at 15. Thus, CVS asserts that Mr. Beckley's opinions are not based on sufficient facts or data—and therefore, lack a reliable foundation—because "any opinion resting solely on a complaint does not rest on any evidence at all." *Id.*

But Mr. Beckley's opinions on the VPSC program did not rely *solely* on Blue Cross' complaint. According to his report, he formed his opinions "[b]ased on [his] knowledge and experience in the pharmacy industry, with NCPDP,[8] and [his] review of relevant documents." ECF No. 115-2 at 8. And some of the "relevant documents" that Mr. Beckley reviewed "[a]s part of [his] work effort" included, not only Blue Cross' complaint, but also CVS's answer to the complaint, various NCPDP standards and guides, and the deposition transcript of a CVS witness named Shannon Gruttadauria. ECF No. 115-2 at 3, 27.

In addition, in his deposition, Mr. Beckley made clear that his opinions concerning the VPSC program were based, not just on Blue Cross' complaint, but also on: (1) his understanding of "how [CVS] process[es] claims," ECF No. 115-4 at 12; (2) information provided by Ms. Gruttadauria at her own deposition, *id.*; and (3) on his "industry background," *id.* at 13-14. To be sure, when asked at his deposition what specific pieces of evidence he relied on to make these opinions, Mr. Beckley often stated that he could not recall or that he "would have to go back to the complaint

[8] NCPDP stands for the "National Council for Prescription Drug Programs." *BCBS*, 2021 WL 6808380, at *1. It is an organization that sets industry standards for certain pharmaceutical transactions. *Id.* at 2.

[and] specific documentation[.]" ECF No. 115-4 at 12-14. And as CVS points out, Ms. Gruttadauria did state at her own deposition that she did not know "what the Value Prescription Savings program is." ECF No. 115 at 5.

But if an expert is having trouble testifying at their deposition without referencing relevant materials, that may be an issue of credibility for jurors to assess—it is not a basis for excluding the expert's testimony. *See Mass. Mut. Life Ins. Co. v. DB Structured Prods., Inc.*, No. 11-30039-MGM, 2015 WL 2130060, at *9 (D. Mass. May 7, 2015); *United States ex rel. Souza v. Embrace Home Loans, Inc.*, 808 F. Supp. 3d 314, 338-39 (D.R.I. 2025).

In addition, if the support for some of Mr. Beckley's opinions are supposedly undermined by Ms. Gruttadauria's own testimony, the law favors "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as a means of "attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. There is, after all, "an important difference between what is unreliable support and what a trier of fact may conclude is insufficient support for an expert's conclusion." *Milward*, 639 F.3d at 15. If anything, Mr. Beckley's opinions fall into the latter category.

**2. Factual Assumptions**

CVS also accuses Mr. Beckley of resting his opinions concerning VPSC on "demonstrably inaccurate assumptions" that he came up with after reading Blue Cross' complaint. ECF No. 115 at 17. Some of these assumptions are that: (1) VPSC "was [CVS's] program and it wasn't available to anyone else"; (2) "[t]he standard drug

prices for . . . VPSC are set and published by CVS"; (3) "the customer did not make any arrangements with or agree to any terms and conditions with any third party to provide any benefit"; and (4) VPSC involved a "fake adjudication." *Id.* But CVS asserts that these assumptions are flawed because "the 'facts' [Mr. Beckley] claims to know about the program from the complaint are not, in fact, even alleged in [Blue Cross'] complaint." *Id.*

In forming an opinion, an expert is permitted to "make reasonable assumptions that are consistent with the evidence available to them." *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 88 (1st Cir. 2017) (citing *Cummings v. Standard Reg. Co.*, 265 F.3d 56, 65 (1st Cir. 2001)). And again, a party need not prove to the satisfaction of the Court that the expert's "assessment of the situation is correct." *Ruiz-Troche*, 161 F.3d at 85. Indeed, "'[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.'" *Milward*, 639 F.3d at 22 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). "'When the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury.'" *Id.* (quoting *United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006)).

The Court cannot say that the assumptions on which Mr. Beckley relied are unreasonable or inconsistent with the evidence that he had available to him. Again, he did not rely *solely* on Blue Cross' complaint to form his opinions concerning the VPSC program. He also relied on CVS's answers to the complaint, his background in

the pharmaceutical industry, and Ms. Gruttadauria's deposition transcript. ECF No. 115-2 at 3, 27. The factual underpinnings supporting Mr. Beckley's opinions may very well end up being weak, but ultimately that "'is a matter affecting the weight and credibility of the testimony' and thus 'a question to be resolved by the jury.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Milward*, 639 F.3d at 22).

**3. Rule 403**

But the inquiry does not end there. Even appropriate expert testimony under Rule 702 may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see also Daubert*, 509 U.S. at 595. Indeed, CVS invokes Rule 403 to argue that admitting Mr. Beckley's testimony would confuse the issues, mislead the jury, and be unfairly prejudicial. ECF No. 115 at 19-20. CVS contends that Mr. Beckley "knows virtually nothing about the [VPSC] program," and that "he merely made assumptions based on vague allegations in the complaint." ECF No. 115 at 20. And CVS also insists that Mr. Beckley "conflates" HSP and VPSC such that "his testimony would generate more confusion[.]" *Id.*

The Court does not consider Mr. Beckley's testimony concerning the VPSC program to violate Rule 403. First, attacking Mr. Beckley over his purported lack of knowledge of the VPSC program calls into question his credibility and the amount of weight to put on his testimony. *See Milward*, 639 F.3d at 22. It is not a basis for excluding his testimony on a theory of unfair prejudice. In fact, the First Circuit

warns against excluding evidence "from jurors' scrutiny for fear that they will not . . . satisfactorily weigh its inadequacies." *Ruiz-Troche*, 161 F.3d at 85. Rather, this testimony "should be tested by the adversary process—competing expert testimony and active cross-examination." *Id.*

Second, the Court does not agree that Mr. Beckley's testimony on VPSC will confuse the issues or mislead the jury. This argument assumes that it is a well-settled fact that HSP and VPSC are "two different programs," and that Mr. Beckley is unfairly "conflat[ing] the two." ECF No. 115 at 20. But Blue Cross seems to argue just the opposite, that is, that the two programs are very similar, if not the same. For instance, Blue Cross asserts that VPSC merely replaced HSP,[9] and that CVS exercised control over both programs.[10] By design, the jury is meant to decide facts, like these, that are in dispute. Thus, the Court will admit this testimony and let the jury decide for itself whether to credit it.

### E. ECF No. 116 – CVS's Motion in Limine to Exclude Expert Testimony re: "Widely and Consistently Available" Pharmacy Prices

Blue Cross' experts Dr. Kenneth Schafermeyer, Mr. Petron, and Mr. Beckley each proffer expert testimony that describe U&C prices by reference to prices that are "widely and consistently available." ECF No. 136 at 1. CVS argues that Blue

[9] *Compare* ECF No. 140 ¶ 46 ("CVS and ScriptSave terminated the HSP program on February 1, 2026 and replaced it with the VPSC."), *with* ECF No. 156 ¶ 46 ("CVS disputes that ScriptSave's Value Prescription Savings Card 'replaced' Health Savings Pass.").

[10] *Compare* ECF No. 119 ¶ 174 ("The [VPSC] is a ScriptSave program."), *with* ECF No. 139 ¶ 174 ("[T]hough ScriptSave may have administered the VPSC program, it was very much a CVS program.").

Cross' experts should not be permitted to proffer these opinions because they are not relevant and thus unhelpful to the jury and because the term "widely and consistently available" is not an industry term of art and requires no specialized knowledge to understand. ECF No. 116 at 4. Blue Cross counters, claiming that CVS misunderstands their experts' proffered testimony. ECF No. 136 at 1. According to Blue Cross, its experts are opining on the industry term "usual and customary," and they merely use the term "widely and consistently available" as a way of conveying what "usual and customary" means. *Id.* at 1, 5-6.

**1. Relevance**

As mentioned, Rule 702 requires that expert testimony "'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). In other words, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert*, 509 U.S. at 591 (internal quotation marks and citations omitted).

The Court does not agree that Blue Cross' opinions are irrelevant. A key dispute here—in fact, *the* key dispute here—is over the precise definition of U&C pricing. *See BCBS*, 2021 WL 6808380, at *1 ("U&C is the governing metric, and its definitions are at the heart of these cases."). Blue Cross' experts intend to testify about the industry understanding of U&C pricing, and Blue Cross submits that the term "widely and consistently available" is "simply a well-accepted way of conveying the idea of 'usual and customary.'" ECF No. 136 at 5. CVS, for its part, argues that

the term "widely and consistently available" has "no specialized meaning in the pharmacy industry." ECF No. 116 at 14.

Ultimately, determining the relevant industry standard is a factual question for a jury to decide. *See, e.g.*, *Wirth v. Salesforce, Inc.*, No. 23-11718-BEM, 2026 WL 1132926, at *5 (D. Mass. Apr. 27, 2026) ("Determining relevant industry standards and what someone in a party's position should have known both present factual questions."); *In re Lantus Direct Purchaser Antitrust Litig.*, No. 16-12652-LTS, 2026 WL 942147, at *8 (D. Mass. Feb. 11, 2026) ("[J]uries have an important role in adjudicating subsidiary factual disputes, such as industry custom and historical fact."), *report and recommendation adopted*, 2026 WL 939793 (D. Mass. Mar. 24, 2026). Perhaps the term "widely and consistently available" reflects the common or prevailing understanding of U&C pricing, or perhaps it does not. That will be for the jury to decide. In any event, the Court declines to exclude this evidence on the grounds that it is irrelevant or unhelpful to the jury.

**2. Specialized Knowledge**

Nor does the Court agree with CVS that the term "widely and consistently available" is not an industry term and that it does not require specialized knowledge. First, the view of Blue Cross' experts, which is that U&C pricing considers whether prices are "widely and consistently available," is far from anomalous.

At least one federal court of appeals—the Seventh Circuit—has recognized that this "widely and consistently available" terminology is important for understanding what U&C pricing means. *See United States ex rel. Garbe v. Kmart*

*Corp.*, 824 F.3d 632, 645 (7th Cir. 2016) ("Because Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs were *widely and consistently available*, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs." (emphasis added)).[11]

Of course, the First Circuit has not taken a stance one way or the other (nor has this Court). But at least with respect to those courts governed by Seventh Circuit precedent (that is, federal courts in Illinois, Indiana, and Wisconsin), the term "widely and consistently available" has become somewhat of a familiar term in cases involving pharmaceutical pricing.[12] *See, e.g.*, *United States v. SuperValu, Inc.*, No. 11-3290, 2019 WL 3558483, at *8 (C.D. Ill. Aug. 5, 2019) ("The Court finds that Defendants' lower matched prices, offered to the general public and *widely and consistently available*, are the usual and customary prices for their drugs." (emphasis added)).

Turning to the "specialized knowledge" issue, the First Circuit has said that "[i]f a layperson is capable of understanding an issue without the aid of an expert, a

[11] In a similar action, the Sixth Circuit cited *Garbe* and referred to Rite Aid's Rx Savings Program as a program that is "free and *widely available*[.]" *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 819-20 (6th Cir. 2021) (emphasis added). The Sixth Circuit encompasses federal courts in Kentucky, Michigan, Ohio, and Tennessee.

[12] Indeed, the term "widely and consistently available" comes from an opinion out of the Eighth Circuit (a circuit that encompasses federal courts in Arkansas, Iowa, Minnesota, Missouri, Nebraska, and North Dakota), which further demonstrates the acceptance of the term in pharmaceutical circles. *See Garbe*, 824 F.3d at 644 (citing *Ark. Pharmacists Ass'n v. Harris*, 627 F.2d 867, 869 n.4 (8th Cir. 1980) (noting that "[t]he [Maximum Allowable Cost]," relevant only if lower than the usual and customary price, "is basically the lowest price at which a drug is *widely and consistently available*" (emphasis added))).

district court may properly decline to admit expert testimony on that issue on the ground that it would not be helpful to the jury." *United States v. Navedo-Ramirez*, 781 F.3d 563, 568 (1st Cir. 2015) (citing *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999)).

The Court does not expect a jury to be familiar with pharmaceutical industry jargon. At least one other court, in a case like this one, has recognized just how "extraordinarily opaque this [pharmaceutical] industry is." *Kirkbride v. Kroger Co.*, 349 F.R.D. 160, 188 (S.D. Ohio 2025). "This opacity, for the most part, stems from complex, interdependent relationships between pharmacies, intermediate [PBMs], insurance providers, and other pharmaceutical players—relationships that remain shrouded in secrecy, particularly when it comes to pricing structures and contractual provisions." *Id.* "[T]he lexicon itself becomes a barrier to understanding." *Id.*

Suffice it to say, the Court does not consider the term "widely and consistently available," at least with respect to pharmaceutical pricing, to fall within the common understanding of an untrained layperson. An expert is in the best position to help jurors discern what that term means. Accordingly, the Court will admit this evidence as well.

## III. CONCLUSION

For the reasons stated, the Court rules as follows:

1. The Court DENIES Blue Cross' Motion in Limine to Exclude Expert Opinions of Dr. W. David Bradford (ECF No. 110);

2. The Court DENIES Blue Cross' Motion in Limine to Exclude Expert Opinions of Brett Barlag (ECF No. 111);
3. The Court GRANTS IN PART and DENIES IN PART CVS's Motion in Limine to Limit the Testimony of Blue Cross' Expert Dr. Adam Block (ECF No. 114). Dr. Block may not offer legal opinions as to what federal law and regulations require pharmacies to do and may not testify that federal law and regulations required CVS to submit HSP and VPSC prices as U&C prices. Dr. Block's other testimony is allowed;
4. The Court DENIES CVS's Motion in Limine to Exclude Two Opinions Offered by Bob Beckley (ECF No. 115); and
5. The Court DENIES CVS's Motion in Limine to Exclude Expert Testimony re: "Widely and Consistently Available" Pharmacy Prices (ECF No. 116).

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_________________________________

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 28, 2026