UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.,<br>Defendant. | No. 20-cv-236-JJM-PAS<br>No. 20-cv-458-JJM-PAS<br>No. 20-cv-507-JJM-PAS<br>No. 20-cv-520-JJM-PAS<br>No. 21-cv-223-JJM-PAS |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

This action consists of five consolidated cases[1] wherein thirteen different health insurers associated with Blue Cross and Blue Shield ( "Blue Cross")[2] accuse CVS Pharmacy, Inc. ("CVS") of causing them to overpay for prescription drugs. *See*

[1] The cases are as follows: (1) *Blue Cross & Blue Shield of Ala. v. CVS Pharmacy, Inc.* ("*BCBS*"), No. 20-cv-236-JJM-PAS; (2) *Horizon Healthcare Servs., Inc. v. CVS Pharmacy, Inc.*, No. 20-cv-458-JJM-PAS; (3) *Highmark Inc. v. CVS Pharmacy, Inc.*, No. 20-cv-507-JJM-PAS; (4) *Cap. BlueCross v. CVS Pharmacy, Inc.*, No. 20-cv-520-JJM-PAS; and (5) *CareFirst of Md., Inc. v. CVS Pharmacy, Inc.*, No. 21-cv-223-JJM-PAS. All ECF Nos. in this Order correspond with the lead case, *BCBS*, No. 20-cv-236-JJM-PAS.

[2] In total, Blue Cross is made up of twenty-two different legal entities, but the parties have categorized them as thirteen different health insurers, or groups of health insurers, as follows: (1) Blue Cross and Blue Shield of Alabama ("BCBS-AL"); (2) Blue Cross and Blue Shield of Florida ("BCBS-FL"); (3) Blue Cross and Blue Shield of Kansas City ("BCBS-KC"); (4) Blue Cross and Blue Shield of Louisiana ("BCBS-LA"); (5) Blue Cross and Blue Shield of Minnesota ("BCBS-MN"); (6) Blue Cross and Blue Shield of North Carolina ("BCBS-NC"); (7) Blue Cross and Blue Shield of North Dakota ("BCBS-ND"); (8) Blue Cross and Blue Shield of South Carolina ("BCBS-SC"); (9) Capital; (10) CareFirst; (11) HealthNow; (12) Highmark; and (13) Horizon. ECF No. 119 ¶¶ 7-72; ECF No. 139 ¶¶ 7-72.

ECF No. 46 at 3-5 (recounting the basic facts of this case); *see also Blue Cross & Blue Shield of Ala. v. CVS Health Corp.*, Nos. 20-236-WES, 20-458-WES, 20-507-WES, 20-520-WES, 2021 WL 6808380, at *1 (D.R.I. July 6, 2021).

Earlier this year, the parties cross-moved for summary judgment, *see* ECF Nos. 108, 113, but the Court writes to address only one of the issues presented in those motions: diversity jurisdiction.

For the reasons stated below, the Court DENIES WITHOUT PREJUDICE both motions for summary judgment and ORDERS discrete pretrial discovery limited to the issue of diversity jurisdiction.

## I. LEGAL STANDARD

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). "'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Id.* at 431 (quoting *Steel Co.*, 523 U.S. at 94). That is why "jurisdictional questions ordinarily must precede merits determinations in dispositional order[.]" *Id.*

To invoke a federal court's jurisdiction, there must be either: (1) federal-question jurisdiction (i.e., a case that "arises under" federal law); or (2) diversity

jurisdiction (i.e., a case with complete diversity of citizenship between the parties and an amount in controversy over $75,000). *See* 28 U.S.C. §§ 1331, 1332.

As relevant here, "[d]iversity jurisdiction exists only when there is *complete* diversity, that is, when no plaintiff is a citizen of the same state as any defendant." *Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005) (emphasis in original) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 139 (1st Cir. 2004)); *see also* 28 U.S.C. § 1332. "The existence of subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). Rather, "'[t]he party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 17 (1st Cir. 2013) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

## II. DISCUSSION

Blue Cross asserts that the Court has jurisdiction over this action based on diversity jurisdiction. There is no dispute that the amount in controversy is over $75,000. *See* 28 U.S.C. § 1332(a). The parties also agree that there is "complete diversity" between the named Plaintiffs and CVS.[3] *Gabriel*, 396 F.3d at 13. But the story does not end there.

---

[3] CVS is a citizen of Rhode Island. ECF No. 119 ¶¶ 1-2; ECF No. 139 ¶¶ 1-2. BCBS-AL is a citizen of Alabama, BCBS-FL is a citizen of Florida, BCBS-KC is a citizen of Missouri, BCBS-LA is a citizen of Louisiana, BCBS-MN is a citizen of Minnesota, BCBS-NC is a citizen of North Carolina, BCBS-ND is a citizen of North Dakota, BCBS-SC is a citizen of South Carolina, Capital is a citizen of Pennsylvania,

The Supreme Court has long recognized that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citations omitted). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461 (citations omitted). Whether a party is "real and substantial" often turns on its "interest in th[e] case." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92-93 (2005). The question here becomes: Who are the "real and substantial" parties involved in a case brought by insurance companies on behalf of their clients?

**A. Insurance Industry Background**

To answer that question, one must first understand a key aspect of the insurance industry, namely, the distinction between an insurance company's "insured" clients and their "self-funded" (or "self-insured") clients.[4] *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.* ("*In re Lorazepam I*"), 531 F. Supp. 2d 82, 88 (D.D.C. 2008); *In re Lorazepam & Clorazepate Antitrust Litig.* ("*In re Lorazepam II*"), 631 F.3d 537, 539 (D.C. Cir. 2011).

Whereas insured clients are typically those employers that purchase policies from insurance companies to provide health coverage for their employees, self-funded clients generally refer to employers that provide health coverage directly to their

CareFirst is a citizen of Mayland and the District of Columbia, HealthNow is a citizen of New York, Highmark is a citizen of Pennsylvania, Delaware, and West Virginia, and Horizon is a citizen of New Jersey. ECF No. 119 ¶¶ 7-72; ECF No. 139 ¶¶ 7-72.

[4] For simplicity, the Court will hereafter refer to the latter type of clients as "self-funded clients."

employees using their own funds. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) (explaining this distinction); *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (same). Unlike insured clients, self-funded clients often "bear the financial risks associated with providing insurance coverage." *In re Lorazepam II*, 631 F.3d at 539.

Though they may not buy coverage from insurance companies directly, it is common for self-funded employers to hire these insurance companies to administer health benefits for their employees. *See, e.g.*, *Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 310-11 (1st Cir. 2023); *In re Lorazepam II*, 631 F.3d at 540. Thus, a self-funded entity is an insurance company's "client" only if the company contracts with the entity to provide it with "administrative services." Perhaps more accurately, these self-funded clients are often called "administrative services only" ("ASO") clients. *See, e.g.*, *Russo v. Walgreen Co.*, No. 1:17-cv-02246, 2026 WL 878331, at *3 (N.D. Ill. Mar. 30, 2026).

**B. Self-Funded Clients Are "Real and Substantial" Parties To This Action**

The sheer number of self-funded clients in this case is extraordinary. The parties agree that, in their calculation of damages, Blue Cross has included claims for over 42,000 self-funded clients. ECF No. 119 ¶ 660; ECF No. 139 ¶ 660.[5] For the

[5] This is in addition to the claims that Blue Cross seeks to recover for its insured or non-self-funded clients. CVS contends that Blue Cross' claims for its self-funded clients make up roughly 31% of Blue Cross' total damages calculation. ECF No. 119 ¶ 661. Blue Cross, however, disputes the accuracy of this figure. ECF No. 139 ¶ 661.

purposes of diversity jurisdiction, does Blue Cross have to establish the citizenship of these clients as well? The Court concludes that it must.

In this respect, the Court finds the D.C. Circuit's decision in *In re Lorazepam II* to be persuasive. Like this case, *In re Lorazepam II* involved plaintiff insurance companies[6] that sued "on behalf of themselves and as claims administrators for their self-funded customers." 631 F.3d at 539. The D.C. Circuit concluded that "self-funded customers must be counted as parties for diversity of citizenship purposes," recognizing that these entities "were the ones who felt the effect of defendants' alleged violations with regard to the claims asserted on their behalf." *Id.* at 540. In other words, the self-funded customers—not the named insurance companies—were the "real and substantial" parties to the controversy, at least "with respect to the claims asserted on their behalf." *Id.* (citing *Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency*, 149 F.3d 794, 796 (8th Cir. 1998); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995)).

"At most," the D.C. Circuit reasoned, the plaintiff insurance companies could "act[ ] as agent[s] for the self-funded customers in recovering damages on their claims." *Id.* (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997)). However, because the self-funded customers had to also "be treated as parties for diversity purposes," the D.C. Circuit remanded the case to the district court and opined that "the identity and citizenship of the self-funded

[6] Indeed, at least one of the plaintiff insurance companies in that case, Blue Cross Blue Shield of Minnesota, is a plaintiff in this case as well. *See In re Lorazepam I*, 531 F. Supp. 2d at 87.

customers" had to be determined to decide which "customers may be dismissed in order to restore complete diversity." *Id.* at 540, 542.

Both parties agree that *In re Lorazepam II* is appropriate guidance considering the facts of this case. ECF No. 113 at 69; ECF No. 144 at 81-82.[7] And it is easy to see how this is so. Blue Cross accuses CVS of overcharging its clients for prescription drugs. But for those self-funded clients that used their own funds to purchase prescription drugs, those entities are the ones that were allegedly overcharged—not Blue Cross, which merely provided them with "administrative services." *See Mass. Laborers' Health & Welfare Fund*, 66 F.4th at 310-11; *In re Lorazepam II*, 631 F.3d at 540; *see also Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 435 (E.D. Pa. 2018) (finding that plaintiff insurance company's "self-insureds," not the insurance company, "as the plan administrator, were the ones who felt the effect of Defendants' alleged violations with respect to the claims [the insurance company] assert[ed] on the self-insureds' behalves"). In other words, Blue Cross' self-funded clients are "real and substantial" parties to this controversy, and Blue Cross merely asserts claims on their behalf.

Accordingly, these clients must also be treated as parties for the purposes of diversity jurisdiction. *See Navarro*, 446 U.S. at 460-61; *In re Lorazepam II*, 631 F.3d at 540.

### C. Blue Cross Has Not Met Its Burden of Establishing Diversity of Citizenship for Its Self-Funded Clients

[7] Blue Cross initially filed its Response in Opposition to CVS's Motion for Summary Judgment at ECF No. 138. However, Blue Cross later refiled its Response with "properly rendered graphics" at ECF No. 144.

Recall that, as the party invoking the Court's diversity jurisdiction, Blue Cross has the burden of proving its existence. *See Calderón-Serra*, 715 F.3d at 17; *Murphy*, 45 F.3d at 522. Once challenged on this issue, Blue Cross has "'the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.'" *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (quoting *Bank One, Tex., N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir. 1992)). And Blue Cross must support its "allegations of jurisdictional facts . . . by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

In its Cross-Motion for Summary Judgment, CVS argues that Blue Cross failed to meet its burden of establishing diversity of citizenship for its self-funded clients. ECF No. 113 at 68-72. In its Response, Blue Cross counters and asserts that its proof was sufficient to establish citizenship for each type of self-funded entity at issue in this case. ECF No. 144 at 72-81.

For context, an entity's citizenship depends on its structure. According to Blue Cross' account, it has submitted claims on behalf of three different types of self-funded entities: (1) incorporated clients; (2) unincorporated clients; and (3) public sector clients. ECF No. 144 at 70-81. The tests that courts use to determine citizenship differ for each of these entities.

Blue Cross argues that it has satisfied each test with the evidence that it proffers. More specifically, Blue Cross informs the Court that it took the following steps to document the citizenship of each of its self-funded clients. First, it ran its

"client names through the business registry search engines associated with each Plaintiffs' service area" (e.g., Louisiana for BCBS-LA, South Carolina for BCBS-SC). ECF No. 144 at 72. "The results of each search on the plan's local registry were captured and produced," and "[i]f the search resulted in no hits, that screenshot was also produced." *Id.* at 73. Blue Cross then ran certain client names through state registries that list information on entities registered to do foreign business in those states. *Id.* Finally, Blue Cross ran each client's name through Rhode Island's business registry to identify any clients who may be Rhode Island entities or registered to do business in the state as foreign entities. *Id.*

The Court will now determine whether Blue Cross has satisfied its burden for each type of asserted entity.

**1. Incorporated Clients**

For diversity purposes, a corporation is a citizen of both the state where it is "incorporated" and the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has instructed courts to use the "nerve center" test to identify a corporation's principal place of business. *Hertz*, 559 U.S. at 80-81. A corporation's nerve center is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 80. "[T]he 'nerve center' will typically be found at a corporation's headquarters." *Id.* at 81.

To prove the citizenship of its incorporated clients, Blue Cross largely relies on state business registries that list the clients' "Principal Office" address. *See, e.g.*, ECF No. 140-88, Ex. PX-88 (listing the "Principal Office" of Perdue Farms Inc. on

Maryland's state business registry website); ECF No. 140-90, Ex. PX-90 (listing the "Principal Office" of Selectquote, Inc. on the Kansas Secretary of State website); ECF No. 119-290, Ex. DX288 (listing the "Principal Office" of Thermo Fisher Scientific Inc. on the Rhode Island Secretary of State website).

But this method fails to satisfy the requirements of diversity citizenship. Without more, "the mere filing of a form . . . listing a corporation's 'principal executive offices'" is not enough "to establish a corporation's 'nerve center.'" *Hertz*, 559 U.S. at 97. "[C]orporate filings stored online in public records maintained by state Secretaries of State" are also insufficient. *In re Lorazepam & Clorazepate Antitrust Litig.* ("*In re Lorazepam III*"), 900 F. Supp. 2d 8, 18 (D.D.C. 2012); *see also Condado 2 CLF, LLC v. R.R. Enters., S.E.*, No. 17-1994, 2018 WL 2094371, at *1 (D.P.R. May 4, 2018) (Gelpí, J.) ("Basic corporate filings . . . are not, on their own, sufficient to provide the necessary support [for diversity jurisdiction].").

Blue Cross assumes that a corporation's "Principal Office" is also its "principal place of business," but the two are not necessarily the same. *Cf. Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1236-37 (1st Cir. 1991) (observing that a company's "Corporate Office" may not necessarily be its "nerve center" because it remained "entirely unclear what functions the . . . 'Corporate Office' performed and the relation of that office to [the company's] other activities"); *Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1190 (7th Cir. 1986) (observing that a corporation's "principal executive office" may not necessarily be the corporation's "principal place of business" for purposes of diversity jurisdiction).

Blue Cross also points to Rhode Island's Secretary of State website, which typically lists information for entities registered to do business in the state as foreign corporations. ECF No. 144 at 74-75. For example, the website lists the "Officers and Directors of the [Foreign] Corporation," as well as the respective addresses of those Officers and Directors. *See, e.g.*, ECF No. 119-290, Ex. DX288. Blue Cross claims that this demonstrates the principal place of business for at least some of its incorporated clients. ECF No. 144 at 74-75 (arguing that one client's "principal place of business" is in Waltham, Massachusetts at least in part because that client's officers and directors are located at that address). Yet "a listing of addresses for corporate executives and directors . . . offers little in the way of support for where the companies' officers *actually* 'direct' and 'coordinate' corporate activity." *In re Lorazepam III*, 900 F. Supp. 2d at 19 (emphasis in original); *see also Pool v. F. Hoffman-La Roche, Ltd.*, 386 F. Supp. 3d 1202, 1220 (N.D. Cal. 2019) (concluding that defendant had not established that New Jersey was principal place of business even though the majority of officers were located there, noting that "sheer numbers are not dispositive").

Finally, Blue Cross has produced "search results" from Rhode Island's Secretary of State's website, indicating that "the name of a respective self-funded client bore no hits." ECF No. 144 at 75. According to Blue Cross, "[t]his is dispositive of a lack of principal place of business in Rhode Island" because "[w]ere a self-funded client to transact *any* business in the state . . ., let alone be headquartered there, they would have to be registered to do business there pursuant to Rhode Island law." *Id.*

(emphasis in original). Blue Cross also "submitted declarations from certain incorporated self-funded clients . . . attesting that, as of the time of the filing of the complaint, they were not a Rhode Island corporation, nor were they headquartered in Rhode Island." *Id.*

This evidence is also insufficient. "[A] sheer statement asserting that the plaintiff's members are not of the same citizenship as defendant fails to meet plaintiff's burden to show complete diversity." *Condado 3 CFL, LLC v. Centro de Desarrollo y Servicios Especializados*, No. 18-1211 (ADC), 2020 WL 624195, at *3 (D.P.R. Feb. 10, 2020) (citing *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra* ("*D.B. Zwirn*"), 661 F.3d 124, 125-26 (1st Cir. 2011) (per curiam)).

In general, there are an array of factors that courts in the First Circuit consider in determining a corporation's principal place of business, including the: "location of directors' meetings and where major policy decisions are made; location of managers and other corporate personnel who direct daily operations; location of the operations themselves; location from which corporate income tax is filed; location of bank accounts." *Media Duplication Servs.*, 928 F.2d at 1237. Yet Blue Cross has failed to produce factual allegations bearing on any one of these factors.

The Court recognizes that this may seem counterintuitive because much of the relevant information pertaining to the corporate citizenship of its clients is difficult for Blue Cross itself to obtain. Unlike the incorporated plaintiff in *Media Duplication Services*, Blue Cross is not being "called upon to establish [its] own citizenship," and so it is not as simple as having to find information "available to [them] through [their]

own corporate records." 928 F.2d at 1237 (internal quotation marks and citations omitted). It is the incorporated clients, not Blue Cross, who will have a much easier time producing this information. In any event, this is the result that the "nerve test" calls for, even if it produces "seeming anomalies." *Hertz*, 559 U.S. at 96 ("We understand that such seeming anomalies will arise. However, in view of the necessity of having a clearer rule, we must accept them."); *see also Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 657 (E.D. Pa. 2012) ("In *Hertz,* the Supreme Court acknowledged that the 'nerve center' test may sometimes lead to counterintuitive results.").

Accordingly, the Court finds that Blue Cross has not met its burden of proving diversity jurisdiction for its incorporated clients.

**2. Unincorporated Clients**

The Court next turns to Blue Cross' unincorporated clients. The general rule is that "[t]he citizenship of an unincorporated entity . . . is determined by the citizenship of all of its members." *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.* ("*Pramco*"), 435 F.3d 51, 54 (1st Cir. 2006). Courts have extended this rule to all sorts of unincorporated entities, including unions, partnerships, limited partnerships ("LPs"), limited liability companies ("LLCs"), and limited liability partnerships ("LLPs"). *See, e.g.*, *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016); *Pramco*, 435 F.3d at 54-55; *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 696 (1st Cir. 2023); *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 176 (D. Mass. 1997).

To prove the citizenship of "self-funded clients who appeared to be unincorporated or otherwise could not be found on any registry," Blue Cross submits that it secured declarations from some of those clients. ECF No. 144 at 76. In those declarations, these clients "affirmed under penalty of perjury, that as of the date [of] the filing of their respective complaint, they were 'an unincorporated entity (e.g. LLC, LLP, sole-proprietorship, or union), with no members who were permanent residents of Rhode Island.'" *Id.* According to Blue Cross, this evidence is sufficient to meet the standard for unincorporated clients because "[r]equiring anything further . . . is an impractical burden to impose on the parties and this Court for 42,000 self-funded clients." *Id.* at 77.

The Court disagrees. Indeed, the First Circuit has addressed this precise issue in the context of an LLC that "attempted to establish diversity in the negative." *D.B. Zwirn*, 661 F.3d at 125. In an action against a citizen of Rhode Island, the LLC filed an affidavit merely stating that "there were no members of the limited liability company who were citizens of Rhode Island." *Id.* But the First Circuit rejected this approach: "That [one party] is a citizen of Rhode Island and that [the other party] is not considered a citizen of Rhode Island 'is not sufficient to give jurisdiction in a . . . Court of the United States.'" *Id.* at 126 (quoting *Cameron v. Hodges*, 127 U.S. 322, 324 (1888)). The Supreme Court also came out against this approach in a case dating back to 1888. *See Cameron*, 127 U.S. at 324 ("That the defendant . . . was a citizen of Arkansas, in connection with the fact that none of the complainants were citizens

of that state, is not sufficient to give jurisdiction in a circuit court of the United States.").

The Court therefore cannot allow Blue Cross to proceed under the methodology it proposes to establish citizenship for its unincorporated clients. "[A] party must 'trace the citizenship of any member that is an unincorporated association through however many layers of members or partners that there may be.'" *BRT Mgmt.*, 68 F.4th at 696 (quoting *D.B. Zwirn*, 661 F.3d at 126-127). In other words, "a plaintiff must plead jurisdiction in the *affirmative*." *Cormier v. Securitas Sec. Servs., USA, Inc.*, 578 F. Supp. 3d 264, 266 (D.N.H. 2022) (emphasis added) (citing *D.B. Zwirn*, 661 F.3d at 126). That means establishing the citizenship of every one of its uninsured clients' members and partners. "Impractical" though this may be for Blue Cross, *see* ECF No. 144 at 77, the First Circuit has made clear that "this jurisdiction issue has the potential to be iterative." *D.B. Zwirn*, 661 F.3d at 126; *see also BRT Mgmt.*, 68 F.4th at 696.

Without more, Blue Cross' sworn declarations that its unincorporated clients had "no members who were permanent residents of Rhode Island" does not suffice, and it has thus failed to establish diversity jurisdiction for these clients as well.

**3. Public Sector Clients**

Finally, the Court turns to Blue Cross' public sector clients.[8] Blue Cross submits that these clients include "local government entities, such as public schools,

[8] Blue Cross argues that CVS waived its ability to challenge the citizenship of its public sector clients because CVS failed to address that specific argument in its Motion for Summary Judgment. ECF No. 144 at 78. However, as the Supreme Court

local law enforcement, county governments, etc." ECF No. 144 at 77. But that is not all. CVS contends that Blue Cross has also listed the following entities as public sector clients: "the State of Alabama . . .[,] corporations, private universities, private schools, charter schools, hospitals, trusts, power cooperatives, economic development agencies, and even the YMCA." ECF No. 155 at 49.

The Court starts with some ground rules. First, "[a] State cannot be a 'citizen' of itself for purposes of diversity jurisdiction." *Univ. of R.I. v. A.W. Chesterton Co.* ("*A.W. Chesterton*"), 2 F.3d 1200, 1202 (1st Cir. 1993) (citations omitted). Diversity jurisdiction simply "does not exist where a state is a party" because "Congress has not empowered the federal courts to exercise diversity jurisdiction over the states." *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 499 (1st Cir. 2000). Thus, in this case, listing the "State of Alabama" as a public sector client—and hence, a real party in interest—is a non-starter. ECF No. 137-3, Ex. PX-72 at 17; *see In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 268,

---

has made clear, "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at *any* stage in the litigation[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (emphasis added). Indeed, CVS raised such an objection, specifically challenging the citizenship of Blue Cross' public sector clients, in its Reply. *See* ECF No. 155 at 47-52.

For its part, CVS takes issue with Blue Cross filing new exhibits following the close of fact discovery and "at the summary-judgment-reply stage" so that it can prove the citizenship of its public sector clients. *See* ECF No. 155 at 50-52. But Blue Cross' actions here are not improper. If a defendant can, at any time, raise an objection to the Court's subject-matter jurisdiction, then it follows that a plaintiff may, at any time, submit evidence proving that the Court has subject-matter jurisdiction. *See Andersen v. Vagaro, Inc.*, 57 F.4th 11, 15 (1st Cir. 2023) ("To fend off a jurisdictional challenge, a plaintiff may amend the complaint or submit additional documentation, such as affidavits, medical reports, or interrogatories.").

275-77 (D. Mass. 2015) (collecting cases holding that a state cannot be a "real party in interest" for purposes of diversity jurisdiction).

Second, "a political subdivision possessing the formal status of a body politic and corporate, such as a county or municipality, is presumed a citizen for diversity purposes unless it is simply the arm or *alter ego* of the State." *A.W. Chesterton*, 2 F.3d at 1202 (emphasis in original) (internal quotation marks and citations omitted). In other words, if a party is an arm of the state or the state's alter ego, then it "stands in the same position as the state for diversity purposes," and a court would "lack . . . an independent basis for federal jurisdiction over that party in diversity." *U.S.I. Props.*, 230 F.3d at 499-500 (citations omitted).

Determining whether a public entity is an arm or alter ego of a particular state has been described as a "fact-intensive citizenship inquiry," mandated by the Supreme Court's decision in *Moor v. County of Alameda*, 411 U.S. 693 (1973). *A.W. Chesterton*, 2 F.3d at 1213. Each entity "must be evaluated in light of its unique characteristics." *Id.* at 1204.

For instance, courts in the First Circuit determine a public entity's independence from the state by looking at:

> [W]hether the entity (1) performs an "essential" or "traditional" governmental function, as opposed to a nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate "public corporation"; (5) may sue and be sued in its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property; or (8) has been expressly debarred from incurring debts in the State's name or behalf.

*A.W. Chesterton*, 2 F.3d at 1205 (citations omitted). An entity's financial and operational autonomy from the state is among the most important factors in this analysis. *Id.* at 1206-17. And to conduct this citizenship analysis, courts often examine the provisions of state law that define the entity's character and relationship to the state. *Id.* at 1213; *United States ex rel. Willette v. Univ. of Mass., Worcester* ("*Willette*"), 812 F.3d 35, 40 (1st Cir. 2016) ("While arm-of-the-state status is ultimately a question of federal law, 'that federal question can be answered only after considering the provisions of state law that define the [entity's] character.'" (quoting *Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997))).

The Court is not convinced that Blue Cross has sufficiently engaged with this analysis. To prove diversity jurisdiction, Blue Cross has filed a sixty-six page "summary exhibit"[9] that lists thousands of its public sector clients,[10] and each client is categorized by entity type (e.g., county, municipality, school district/school board, university, sheriff's office, housing authority, public utility board, library system, transportation authority), by entity name, and by an accompanying state statutory provision[11] that purports to demonstrate "the statutory authority for that entity to be

---

[9] After it submitted its Response In Opposition to CVS's Motion for Summary Judgment, Blue Cross moved for leave to file a supplemental declaration and additional exhibits in support of its Response. ECF No. 145. The Court granted that motion. *See* Text Order (May 11, 2026). Thereafter, Blue Cross submitted this summary exhibit, which it asserts "supersede[s]" the material it initially submitted as part of its Response to prove the citizenship of its public sector clients. ECF No. 145 at 6.

[10] By the Court's own estimate, Plaintiffs have listed approximately 1,600 public sector clients. *See generally* ECF No. 146-6, Ex. PX-105.

[11] In total, there are approximately 125 statutory provisions from 16 different states. *See generally* ECF No. 146-6, Ex. PX-105.

treated as a citizen of their state—not the state itself—for the purposes of determining diversity jurisdiction." ECF No. 145-1 at 6-7; *see generally* ECF No. 146-6, Ex. PX-105. By Blue Cross' account, it has "now associate[d] those entities with the specific respective statute that set[s] forth the entities' independence from the state[.]" ECF No. 145-1 at 6. And for some (but not all) of its clients, Blue Cross provides footnotes that reference federal court decisions[12] in which "a court has already opined on the citizenship of that entity or entity type." ECF No. 145-1 at 7.

To its credit, Blue Cross has completed an important step in the jurisdictional analysis. Blue Cross has provided the necessary provisions of state law that define each of its clients' character and relationship to the state. *See A.W. Chesterton*, 2 F.3d at 1213; *Willette*, 812 F.3d at 40. Armed with these statutory provisions, Blue Cross submits that the Court can now "easily" conduct a citizenship analysis "on a Plaintiff-specific level by looking to the state laws in their respective states of service." ECF No. 144 at 78. But as CVS points out, *see* ECF No. 155 at 51, that is only half of the job.

The Court cannot presume that Blue Cross has satisfied its burden simply because it has lumped entities into groups by statutory provision; instead, Blue Cross must further distinguish between entities belonging to the same group. *See Fafel*, 399 F.3d at 410 ("The existence of subject-matter jurisdiction 'is never presumed.'"); *cf. Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir.

[12] Plaintiffs reference approximately 40 federal court decisions from across the country. *See generally* ECF No. 146-6, Ex. PX-105.

2022) (holding that plaintiff's "bundled arguments and evidence," which failed to distinguish between two defendants, were insufficient to establish personal jurisdiction over one of the defendants); *Putnam v. EPR Props.*, 174 F.4th 214, 227 (1st Cir. 2026) (same). Blue Cross must also show *how* each statutory provision applies to each entity. Does the statutory provision establish that one or more of the *A.W. Chesterton* factors have been met? Does the statutory provision demonstrate the entity's financial or operational autonomy from the state? Perhaps both?

The citizenship inquiry is, after all, a "fact-intensive" one, and public entities—even those belonging to the same group—"must be evaluated in light of [their] *unique* characteristics." *A.W. Chesterton*, 2 F.3d at 1204, 1213 (emphasis added). The burden is therefore on Blue Cross—not the Court—to engage in the *A.W. Chesterton* analysis and affirmatively show how each entity is endowed "with the operational authority, discretion, and proprietary resources with which to function *independently* of the State." *Id.* at 1205 (emphasis in original) (citations omitted).

To illustrate why this individualized analysis is necessary, consider public colleges and universities. "Although the vast majority of state universities, incorporated and unincorporated alike, have been found to be 'arms' of the State for . . . diversity purposes," the First Circuit concluded—following an individualized analysis of the University of Rhode Island ("URI")—that URI was *not* an arm of the state but rather a citizen of Rhode Island. *A.W. Chesterton*, 2. F.3d at 1203, 1217. That one public university may be sufficiently independent from a state does not necessarily mean that *all* public universities, though similarly classified, are

independent from that same state. It is therefore necessary to analyze each university's characteristics, as they may reveal jurisdictional facts unique to each university. *See e.g.*, *Soni v. Bd. of Trs. of Univ. of Tenn.*, 513 F.2d 347, 352 (6th Cir. 1975) ("Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."), *superseded on other grounds by statute* Tenn. Code Ann. §§ 9-1-103, 20-13-102; *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 302 (6th Cir. 1984) (same); *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991) (same); *Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860, 863 (8th Cir. 1994) (same).[13]

Tedious though it may seem, engaging in the individualized analysis contemplated in *A.W. Chesterton* also becomes necessary to avoid a jurisdictional defect at a later stage in the litigation. Recall that an objection to the Court's subject-matter jurisdiction can be raised at any time. *See Arbaugh*, 546 U.S. at 506. If it later becomes apparent—perhaps, on the eve of trial or even on appeal—that just one of Blue Cross' public sector clients is actually an arm or alter ego of a state, then diversity would be destroyed, and the many years spent litigating this matter would be wasted. *See In re Lorazepam III*, 900 F. Supp. 2d at 11 (describing how, in the months after a trial in which a jury awarded Plaintiffs nearly $77 million,

[13] Many of the cases cited above analyze whether a public entity is sufficiently independent from a state for the purposes of sovereign immunity under the Eleventh Amendment. However, "[t]he criteria are substantially similar for evaluating whether an entity is a citizen of the State for diversity purposes, or a State for Eleventh Amendment sovereign immunity purposes." *A.W. Chesterton*, 2 F.3d at 1203.

"Defendants alleged jurisdictional infirmities" mere "[d]ays prior to oral argument on Defendants' appeal," and the D.C. Circuit ultimately remanded the case to the district court for an inquiry into the citizenship of Plaintiffs' self-funded customers).

Thus, Blue Cross has also failed to establish diversity jurisdiction for its public sector clients. Blue Cross must at least engage in the individualized assessment of each of its clients, as *A.W. Chesterton* requires. 2 F.3d at 1214.

**D. Limited Jurisdictional Discovery Is Appropriate**

Perhaps acknowledging some of the jurisdictional defects in this case, Blue Cross has asked the Court to "order discrete pretrial discovery" so that it can provide the proof that the Court deems necessary to establish subject-matter jurisdiction. ECF No. 144 at 81. CVS opposes this request, arguing that "[Blue Cross] should have produced any necessary discovery (or asked any questions about 'sufficient method of proof') long ago." ECF No. 155 at 52.

CVS's frustration is fair, given that "challenges to subject matter jurisdiction typically arise"—and, ideally, should be addressed—"early in the litigation." *A.W. Chesterton*, 2 F.3d at 1213. That said, the Court "enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (citations omitted); *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) ("[T]he district court possesses 'broad discretion' to determine whether jurisdictional discovery is warranted."). And "[i]f done right, limited and succinct jurisdictional discovery to confirm diversity that is otherwise not belied by

what is known to the parties can assure the parties and the court . . . that complete diversity exists." *BRT Mgmt.*, 68 F.4th at 699.

The Court finds jurisdictional discovery to be warranted under the present circumstances. Few courts have considered whether an insurance company's self-funded clients are "real and substantial parties" that must be counted as parties for the purpose of diversity of citizenship. However, the few that have done so have ordered, or at least contemplated, limited discovery on this precise jurisdictional issue. *See, e.g.*, *In re Lorazepam II*, 631 F.3d at 542; *In re Lorazepam III*, 900 F. Supp. 2d at 20.

The Court also anticipates that limited discovery will help streamline this case. Blue Cross has identified a "list of self-funded clients with potential claims at issue," and it has assured the Court that once it has "establishe[d] the sufficient method of proof that applies to these entities, [it] will provide a list of the subset of those clients, if any, whose claims must be dropped pursuant thereto." ECF No. 144 at 82.

Rule 21 of the Federal Rules of Civil Procedure, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," allows for the result that Blue Cross proposes. Fed. R. Civ. P. 21. Under that rule, "[a] court may drop a dispensable and nondiverse party . . . to cure 28 U.S.C. § 1332(a) jurisdictional defects." *Wai Feng Trading Co. v. Quick Fitting, Inc.*, No. 13-033WES, 2018 WL 6605927, at *27 (D.R.I. Dec. 17, 2018), *report & recommendation adopted*, 2019 WL 6827448 (D.R.I. Sept. 16, 2019); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district

courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."); *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 (1st Cir. 1994) ("[F]ederal courts of appeals have the authority – like that given to the district courts in Fed. R. Civ. P. 21 – to dismiss *dispensable*, nondiverse parties to cure defects in diversity jurisdiction.") (emphasis in original).

The D.C. Circuit contemplated the dismissal of dispensable, nondiverse, self-funded clients as a way of resolving the jurisdictional defects present in *In re Lorazepam II*. 631 F.3d at 542 ("[T]he district court may need to determine which, if any, of the self-funded customers may be dismissed in order to restore complete diversity."). Following jurisdictional discovery, the Court expects a similar resolution to be reached in this case. *See* ECF No. 144 at 81 ("As to any self-funded clients which the court finds are not sufficiently established to be diverse from CVS, the Court can drop those entities from the case while retaining jurisdiction over the remaining Plaintiffs and self-funded clients. CVS does not contend [Blue Cross'] self-funded clients are indispensable parties.").

That only leaves the parties' pending cross-motions for summary judgment. In the interest of developing the record more fully, the Court will not grant summary judgment to either party at this time. The Court denies both motions without prejudice. The parties will be permitted to refile and/or amend their motions once the limited jurisdictional discovery period is complete.

## III. CONCLUSION

For the reasons stated, the Court DENIES WITHOUT PREJUDICE the parties' cross-motions for summary judgment. ECF Nos. 108, 113. The Court GRANTS Blue Cross' request for discrete pretrial discovery for the limited purpose of establishing diversity jurisdiction for its self-funded clients.

Blue Cross will have **six months from the date of this Order** to produce the jurisdictional facts necessary to establish diversity of citizenship for its self-funded clients over whom it alleges this Court has subject-matter jurisdiction. *See In re Lorazepam II*, 900 F. Supp. 2d at 21. This includes Blue Cross' incorporated clients, unincorporated clients, and public sector clients.

Following the six-month period, Blue Cross shall provide the Court and CVS with a list of any self-funded clients over whom it alleges this Court lacks subject-matter jurisdiction. The Court will then determine whether these entities can be dismissed pursuant to Rule 21.

As to those clients over whom Blue Cross alleges this Court has subject-matter jurisdiction, CVS shall have **three months from the date of Blue Cross serving it with their list** to object to any of Blue Cross' jurisdictional facts. Following the three-month period, CVS shall provide the Court with a list of any dispensable, nondiverse entities that they believe should be dismissed from this action under Rule 21.

Should there remain a dispute as to any jurisdictional facts, the parties may request an evidentiary hearing before the Court. *See A.W. Chesterton*, 2 F.3d at 1213-14.

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_______________________________

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

September 8, 2026